UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                         :

THE EXPORT-IMPORT BANK OF THE
REPUBLIC OF CHINA,                   :      13 Civ. 1450 (HB)

       Plaintiff/Judgment Creditor,   :

                   v.         :

GRENADA,                       :

     Defendant/Judgment Debtor.   :
                         x
------------------------------------------------------

## **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE**

**BINGHAM McCUTCHEN LLP**
Timothy B. DeSieno
(tim.desieno@bingham.com)
Katherine Dobson
(katherine.dobson@bingham.com)
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000
Fax: (212) 752-5378

Sabin Willett*
Julia Frost-Davies*
Samuel R. Rowley*
One Federal Street
Boston, MA  02110-1726
Tel.: (617) 951-8000

*Attorneys for Intervenor-Defendants*

May 20, 2013

* Motions for admission *pro hac vice* have been prepared and will be filed upon issuance from the Massachusetts Supreme Judicial Court of the necessary certificates.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 2

I.    Grenada's Exchange Offer and Intervenors' Bonds ........................................... 2

II.   The Current Procedural Posture .......................................................................... 3

III.  Ex-Im Bank's Pari Passu Theory Against Grenada ............................................ 4

ARGUMENT .................................................................................................................. 5

I.    Intervenors Qualify For Intervention As Of Right Under Rule 24(a) ................ 5

a.         Timeliness .................................................................................................. 5

b.         Intervenors' Interest in the Action ............................................................ 6

c.         Impairment of the Interest ......................................................................... 6

d.         Inadequacy of Current Representation ...................................................... 7

II.   Intervenors Should Be Permitted To Intervene Under Rule 24(b) ..................... 9

a.         Grenada's Position .................................................................................... 10

b.         Ex-Im Bank's Position ............................................................................. 10

CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACORN v. County of Nassau,*
270 F.R.D. 123 (E.D.N.Y. 2010) ...................................................................................9

*Brennan v. N.Y.C. Bd. of Educ.,*
260 F.3d 123 (2d Cir. 2001)...................................................................................5, 7

*Export-Import Bank the Republic of China v. Grenada,*
No. 06 Civ. 2469 (HB) (AJP) (S.D.N.Y.)....................................................................4, 11

*Franz v. W. Bank Marina & Yacht Club,*
2012 WL 3039941 (E.D.N.Y. June 15, 2012) ...............................................................5

*Herdman v. Town of Angelica,*
163 F.R.D. 180 (W.D.N.Y. 1995)..............................................................................6

*LaRouche v. Fed. Bureau of Investigation,*
677 F.2d 256 (2d Cir. 1982)....................................................................................7

*N.J. Carpenters Health Fund v. Residential Capital, LLC,*
2010 WL 5222127 (S.D.N.Y. Dec. 22, 2010) ...............................................................6

*N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of N.Y.,*
516 F.2d 350 (2d Cir. 1975).....................................................................................8

*NML Capital, Ltd. v. the Republic of Argentina,*
699 F.3d 246 (2d Cir. 2012)............................................................................. passim

*NML Capital, Ltd. v. the Republic of Argentina,*
No. 12-105 (2d Cir. Nov. 30, 2012)..................................................................... passim

*Stone v. First Union Corp.,*
371 F.3d 1395 (11th Cir. 2004) ...............................................................................8

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.,*
694 F.3d 155 (2d Cir. 2012)...................................................................................10

OTHER AUTHORITIES

Fed. R. Civ. P. 12(c) ...............................................................................................1, 3

Fed. R. Civ. P. 24(a) ...............................................................................................5, 6

Fed. R. Civ. P. 24(a)(2)..............................................................................................6

- ii -

Fed. R. Civ. P. 24(b) ........................................................................................................9

Fed. R. Civ. P. 24(b)(1)(B) ..............................................................................................9

Fed. R. Civ. P. 24(c) ........................................................................................................1

GMO Trust, on behalf of its series GMO Emerging Country Debt Fund, GMO Emerging Country Debt L.P., GMO Emerging Country Debt Investment Fund plc, and Greylock Global Opportunity Master Fund Ltd. ("Intervenors"), submit this memorandum of law in support of their motion to intervene under Rule 24 of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Intervenors hold beneficial interests in bonds that were originally issued by Grenada in a 2005 debt exchange, which were either acquired in the exchange or in the secondary market. Plaintiff the Export-Import Bank of the Republic of China ("Ex-Im Bank") seeks from this Court a judgment that would effectively bar defendant Grenada from paying Intervenors what it owes them on the Exchange Bonds.  Defendant Grenada opposes the relief, but seeks a ruling that would unlawfully impair the rights of Intervenors, and other creditors of Grenada who may go to judgment.  Neither party in the case advances or protects Intervenors' interests.

The parties have filed cross-motions for judgment on the pleadings, and partial judgment on the pleadings under Fed. R. Civ. P. 12(c).[2]  Rule 12(c) orders would be based solely on the current complaint and answer.  Thus the current parties have asked the Court to adjudicate the questions presented, which may severely impact the rights of Intervenors and many other nonparties, without the development of any factual record.  This rush to judgment is unnecessary.  Because Grenada currently makes no payments to any of its institutional creditors, and, following the Court's March 13, 2013 Order on Consent, cannot do so without notice and the opportunity for a hearing, measured consideration of the impact of relief on third parties will

---

[1] Pursuant to Fed. R. Civ. P. 24(c), Intervenors have attached as Exhibit A to their motion the form of Answer in Intervention they wish to file.

[2] Grenada apparently seeks a judgment on the pleadings that Ex-Im Bank is entitled to no relief, Docket No. 13, while Ex-Im Bank has cross-moved for partial judgment on the pleadings. Docket No. 17.

not unfairly prejudice any of the current parties.  Affording the Intervenors a fair opportunity to be heard will help the Court reach an appropriate decision on the pending motions and an appropriate adjudication in the case.  For these and other reasons explained below, the Court should allow intervention.  *See NML Capital, Ltd. v. the Republic of Argentina*, No. 12-105 [ECF 512] (2d Cir. Nov. 30, 2012) (order permitting holders of Argentina exchange bonds to intervene at the appellate stage, two years after commencement of its action).

Intervenors have been advised by counsel to the parties that the Court has scheduled a hearing for May 29 on Grenada's motion for judgment on the pleadings, and does not plan at that hearing to consider Ex-Im Bank's cross-motion nor the equitable relief Ex-Im Bank seeks by complaint.  Intervenors request a short adjournment of that hearing, so that they may brief the issues raised by Grenada's motion.[3]

## BACKGROUND

### I.      Grenada's Exchange Offer and Intervenors' Bonds

In September, 2005, Grenada offered to restructure certain "Eligible Claims" held by its external creditors by exchanging U.S. Dollar Bonds Due 2025 and E.C. Dollar Bonds Due 2025 (the "Exchange Bonds") for the Eligible Claims.  *See* Answer of Proposed Intervenors ("Intervenors' Answer") ¶ 17. The Offering Memorandum for this exchange offer provided that:

> Grenada does not intend to pay any non-tendered Eligible Claims unless resources become available to do so. In addition, Grenada does not intend to pay any amount in respect of a non-tendered Eligible Claim if, at the time such payment is due, a payment default then exists under any [Exchange Bond].

---

[3] Intervenors have attached as Exhibit B to their motion a form of letter they would deliver to chambers if permitted to intervene.  The letter requests fourteen days from entry of an order granting intervention for the preparation and submission of a memorandum of law addressed to Grenada's Rule 12(c) motion.  The letter suggests that the Court also schedule such time for responses from the parties and for hearing as is convenient for the Court.

*See* 3/5/13 Summit Decl., ¶¶ 21 Ex. L, p. 18 (ECF 4).   A significant majority of holders of Eligible Claims responded favorably, and in November, 2005, Grenada's debt exchange was completed, resulting in the restructuring of approximately 97% of Grenada's external debt. Intervenors' Answer ¶ 17.

Interest on the Exchange Bonds is due each March 15 and September 15 of each year. *Id.* ¶ 22.   Grenada's last interest payment was made late (on or about October 12, 2012), but did not constitute an event of default because the Exchange Bonds provide for a 30-day grace period following each interest due date. *Id.* ¶ 23.   Grenada failed to make its March 15, 2013 interest payment. *Id.* ¶ 23.   As of April 15, 2013, Grenada is in default.   Grenada claims that it has been unable to raise sufficient funds to make the payment. *Id.* ¶ 23.

## II.     The Current Procedural Posture.

Ex-Im Bank commenced this action on March 4, 2013.   Its complaint alleges that Ex-Im Bank is an unsatisfied judgment creditor of Grenada, Complaint ¶¶ 6-7, 9, and seeks "specific performance" of its reading of relevant *pari passu* clauses.   In effect, it seeks a permanent injunction against Grenada's payment of debt obligations to Intervenors, and other third parties, unless the judgment is satisfied. *Id.* ¶¶ 6-7.   Grenada answered and moved for a judgment on the pleadings under Fed. R. Civ. P. 12(c), Docket Nos. 12, 13.   Grenada's motion contends that a doctrine of "merger" would prevent Ex-Im Bank (and presumably any other judgment creditor) from seeking contract-based relief in aid of its judgment.   Ex-Im Bank cross-moved for partial judgment on the pleadings.   Docket No. 17.   The "pleadings" are simply the complaint, which was not verified, and the answer.   No factual record has been developed concerning Grenada's prior relations with Ex-Im Bank and other creditors, its financial condition, or the impact on either Grenada or the other creditors of a grant of the relief sought.   What little record now exists does not show that either party is entitled to the relief it seeks.   Ex-Im Bank has not even alleged

facts that could lead to such relief (including a ruling of *pari passu* breach) under the standard articulated by the Court of Appeals in *NML Capital, Ltd. v. the Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012), while Grenada seeks an outright judgment based on a misreading of the law of claim preclusion.

**III.   Ex-Im Bank's *Pari Passu* Theory Against Grenada**

In a prior action in this Court, *Export-Import Bank the Republic of China v. Grenada*, No. 06 Civ. 2469 (HB) (AJP) (S.D.N.Y.), Ex-Im Bank obtained a judgment on its debt claim.  That judgment was based on Grenada's default on four loan agreements.  *See* 3/5/13 Summit Decl., ¶¶ 10-14 Exs. A-E (ECF 4).  This Court entered an amended judgment in favor of Ex-Im Bank in the amount of $21,586,057.38 (plus pre-judgment interest, attorneys' fees, and statutory interest). *See* Compl. ¶¶ 6-7.

In the current action, Ex-Im Bank relies on "pari passu" clauses contained in the loan agreements  (the "Pari Passu Clauses").  *See generally*, Summit Decl. (ECF 4).  Ex-Im Bank also relies on a "negative pledge" clause that prohibits Grenada from permitting another of its debts "to have any priority or be subject to any preferential arrangement, whether or not constituting a security agreement, in favor of any creditor or class of creditors, as to security, the repayment of principal and interest or the right to receive income or revenue." Compl. ¶ 13.

Ex-Im Bank asserts that the Pari Passu Clauses "preclude Grenada from making a payment to a holder of External Indebtedness without making a ratable payment at the same time to Ex-Im Bank." Compl. ¶ 16.  It further alleges that Grenada breached the Pari Passu Clauses by making payments on the Exchange Bonds without making payments to Ex-Im Bank.  Compl. ¶¶ 23, 34.  Ex-Im Bank seeks a judgment that would amount to a permanent injunction, "specifically enforcing the *pari passu* clauses and the negative covenant against granting preferential payment arrangements to other creditors." Compl. ¶¶ 35-39; Prayer For Relief (1).

On March 13, 2013, after a preliminary hearing, Ex-Im Bank and Grenada submitted an order on consent, which was entered by this Court ("Consent Order"), pursuant to which "Grenada shall not (i) make any payment with respect to the Bonds or (ii) attempt to alter or amend the processes or specific transfer mechanisms (including the use of existing firms) for the making of payments under the Bonds, without first having given not less than ten (10) calendar days' prior written notice to counsel for Ex-Im Bank and the Court." (ECF 2).  The Consent Order remains in effect.

## ARGUMENT

### I.   Intervenors Qualify For Intervention As Of Right Under Rule 24(a).

Federal Rule of Civil Procedure 24(a) provides that  a court "must permit" a non-party to intervene where disposition of an action may impair that person's ability to protect an interest relating to the property or transaction that is the subject of the litigation, unless existing parties adequately represent that interest.  To intervene as of right, "a movant must: (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."  *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001). Intervenors plainly meet the requirements of Rule 24(a).

a.  *Timeliness.*  The action is two and one-half months old.  Except for the early contest over preliminary relief, which was resolved by consent of the parties, Intervenors are not aware that substantive proceedings have taken place, nor have any evidentiary hearing occurred. So far as Intervenors are aware, the parties have not engaged in discovery.  The docket shows no ruling on a dispositive motion.  At this early stage, intervention will not prejudice the parties. *See Franz v. W. Bank Marina & Yacht Club*, 2012 WL 3039941, at *2 (E.D.N.Y. June 15, 2012) (holding that "[t]he approximate two month delay in filing the motion to intervene is

- 5 -

insignificant and there is no indication that permitting [intervenor] to intervene would prejudice any of the existing parties"); *compare NML Capital, Ltd. v. the Republic of Argentina*, No. 12-105 [ECF 512] (2d Cir. Nov. 30, 2012) (order permitting holders of Argentina exchange bonds to intervene at the appellate stage, two years after commencement of suit).  The Consent Order preserves the status quo until any further order of the Court, with Grenada no longer paying any of the relevant creditors.  Thus the timing of the motion to intervene will not unfairly prejudice any party.

      b.    *Intervenors' Interest in the Action.*  Intervenors have as substantial and direct a financial interest in the "property or transaction that is the subject of the action," *see* Fed. R. Civ. P. 24(a)(2), as can be imagined, for the complaint does not seek *simply* to direct the payment of Ex-Im's judgment, but rather, to impose a further equitable order that, under the circumstances present here, would effectively bar the payment of other valid debts, including those held by Intervenors.  Because Grenada has advised that it is in financial distress, a court order 'specifically enforcing' the private contracts in the way that Ex-Im Bank construes them -- *i.e.,* that they should prevent Grenada from paying creditors in the absence of payments to Ex-Im Bank -- would amount to an injunction on payments to Intervenors.  This is a sufficiently direct interest. *See N.J. Carpenters Health Fund v. Residential Capital, LLC*, 2010 WL 5222127, at *4 (S.D.N.Y. Dec. 22, 2010) (Rule 24(a) interest merely needs to "relate[] to" the property or transaction at issue and "need not even be a property interest").

      c.    *Impairment of the Interest.*  Impairment is "a practical matter." *Herdman v. Town of Angelica*, 163 F.R.D. 180, 194 (W.D.N.Y. 1995).   Prejudice has already occurred, through Grenada's agreement to the Consent Order.  The relief sought by each party would expand that prejudice, and effectively and seriously impair Intervenors' financial interests.  Ex-Im Bank

A/75566578.2

seeks to impose substantial conditions on Grenada's ability to make payments on the Exchange Bonds, impairing Intervenors' interest by imposing an extra-contractual limitation on payments. The relief it seeks would leave Grenada with just two options for compliance -- diverting funds from any payments to Intervenors to pay Ex-Im Bank, or not paying anyone at all.   As a "practical matter," the relief sought would impair Intervenors' interest in the Exchange Bonds, and impede their ability to collect on them.

Impairment of a second kind also threatens Intervenors.  If Grenada's motion is allowed, on the incorrect theory of res judicata and "merger" that it advances, then Intervenors will themselves be prejudiced in their own creditor relations with Grenada, as we show below.

d.   *Inadequacy of Current Representation.*   Representation of an interest by current parties is "adequate" only if the "interests of the existing [parties] [a]re so similar to those of [the proposed intervenor] that adequacy of representation was assured." *Brennan*, 260 F.3d at 132-33.  Parties with incentives to settle a dispute in a way that harms the interests of non-parties cannot adequately represent those non-parties.  *Id.* (inadequate representation where employer has "interest in bringing such litigation to an end by settlements involving the displacement of employees who are not parties to the action"); *see also LaRouche v. Fed. Bureau of Investigation*, 677 F.2d 256, 258 (2d Cir. 1982) (intervenor "carried the minimal burden" of showing inadequate representation because, although the FBI also opposed injunction barring release of documents, its "primary interest is in the defense of the liability claims, not the disclosure of documents").

There is no similarity of interests here.  Ex-Im Bank is plainly adverse to Intervenors' interests, for it seeks an adjudication that would effectively bar, under current circumstances, their ability to collect valid debts.  Ex-Im Bank also advances a theory -- that *NML Capital*

- 7 -

compels this relief in this case -- that is incorrect, but whose error is not developed by Grenada. We address Ex-Im Bank's misreading of *NML Capital infra*, at 10-12.

Grenada does not represent Intervenors' interests either. As a debtor, Grenada is adverse to creditors, like Intervenors, who hold its debt. It thus far has sought to fashion relief on legal rulings that would unfairly advantage its interests vis-à-vis the interests of its creditors, and its willingness to enter voluntarily the Consent Order, imposing conditions on payments on the Exchange Bonds, shows its adversity to Intervenors. If it can win from this Court a decision that doctrines of *res judicata* and merger bar a judgment creditor from seeking ancillary relief based on that creditor's contract, it can use that ruling to deflect the claims of numerous creditors, including Intervenors, who themselves may be constrained to seek judgments. *See N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (per curiam) (permitting intervention to defend a state regulation where intervenors would emphasize a different theory in support of the regulation); *Stone v. First Union Corp.*, 371 F.3d 1395, 1312 (11th Cir. 2004) (plaintiff group alleging different theory of age discrimination permitted to intervene). As the case develops, Grenada may also have an incentive simply to settle rather than adequately defend the action.

Of urgent concern is Grenada's motion for judgment on the pleadings, which advances an unprecedented and erroneous expansion of *res judicata*/merger doctrine. If accepted, that extension would impose a trap on the judgment creditor, and bar a plaintiff from bringing a second, wholly separate claim for breach of a contract, even where the plaintiff could not have brought the claim when it filed its original action. Intervenors intend to show that a judgment on a promissory note should not be preclusive of other contractual rights, including *pari passu* rights, and believe their interests, as creditors of Grenada holding defaulted Exchange Bonds,

would be prejudiced by such a ruling in this case. In light of the pending calendar, Intervenors seek promptly to submit a brief to address the legal grounds for this position, focusing in particular on grounds that have not been fully illuminated by the parties to date. This focus would include (a) contract (as opposed to tort and equitable) cases in which a judgment for debt may not be preclusive on later rights, (b) considerations arising from the nature of commercial lending that support this proposition in the circumstances of this case, and (c) the serious prudential concerns that would be raised for courts, litigants and governments in the sovereign lending context, should Grenada's position prevail.

## II.    Intervenors Should Be Permitted To Intervene Under Rule 24(b).

Even if Intervenors did not qualify for intervention as of right, exercise of this Court's discretion to permit intervention under Fed. R. Civ. P. 24(b)(1)(B) would be warranted, because Intervenors raise "a defense that shares with the main action a common question of law or fact." *Id*. "A court deciding a motion for permissive intervention under Rule 24(b) should consider (1) the relation of the proposed intervenor's claims to the pending case, (2) the timeliness of the motion, and (3) the effect of intervention on the parties to the case." *ACORN v. County of Nassau*, 270 F.R.D. 123, 125 (E.D.N.Y. 2010). Each of these factors weighs in favor of a permissive intervention. We have shown above that the motion is timely and that intervention would not unfairly prejudice either Ex-Im Bank or Grenada, *see* Discussion, *supra* at 5-6, while denial of intervention would materially prejudice Intervenors, leaving them unable to defend against injunctive relief that could severely harm their property interests. *Id*. at 7. This Court's discretion would be warranted here, because each party's position would impair Intervenors' rights. Intervenors would raise a defense to Ex-Im's requested relief, and opposition to Grenada's theory, sharing common questions of law or fact with the main action.

a.     *Grenada's Position.*   Intervenors' opposition to Grenada's position is set forth above, in section I.d., and would be developed by the memorandum Intervenors wish to file.

b.     *Ex-Im Bank's Position.*   Because the complaint seeks "specific performance" of the Pari Passu Clauses, and characterizes that relief as necessarily limiting Grenada's right to pay Intervenors and other creditors, the complaint effectively seeks equitable relief in the form of a permanent injunction.  To obtain such an injunction, Ex-Im Bank would have to show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155 (2d Cir. 2012) (affirming denial of permanent injunction), *citing to eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Intervenors intend to show that Ex-Im Bank cannot meet the necessary tests.  Intervenors and Ex-Im Bank will thus contest the same questions of law, and their resolution will require the Court to consider the same issues of fact.

Ex-Im Bank rests on *NML Capital, Ltd. v. the Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012).  But its theory misreads *NML Capital* in crucial respects, as Intervenors would develop after intervening.[4]

(i)     On the limited record, it does not appear even that *Grenada* has breached the private loan agreements that are at issue in this case.  Ex-Im Bank's judgment still "rank[s] at

---

[4] As noted *supra* n.3, Intervenors understand that the Court plans first to address Grenada's motion.  If that motion is denied (as Intervenors argue it should be), then the theories raised by Ex-Im Bank will arise at a later time in the case.  Intervenors would then address why *NML Capital* does not support the equitable relief Ex-Im Bank ultimately seeks, and why the issue bears on intervention.

A/75566578.2

least pari passu" with the Exchange Bonds, and Ex-Im Bank does not allege any Grenadian statute, official decree, or contract purporting to subordinate its judgment to the Exchange Bonds. It alleges that payments have been made on the Exchange Bonds, but nothing in the *pari passu* clauses forbids such payments. Nor does the complaint plainly allege a breach by Grenada of the negative pledge clause in the Loan Agreements, Compl. ¶ 14, because it alleges no agreement constituting a "preferential arrangement."

(ii)    The fully-developed record supporting the *NML Capital* injunction contained a mass of compelling facts that are simply absent from the record here. The *NML Capital* injunction was based on Judge Griesa's measured exercise of equitable powers following a decade of relentlessly provocative actions by the Argentine state. Argentina repeatedly enacted legislative moratoriums on payment, 699 F.3d at 251, enacted a "Lock Law" "in order to exert additional pressure on bondholders," *id*. at 252, and flouted court orders. *Id*. at 255-56. Grenada has never attempted to shut the door on any possibility of Ex-Im Bank being paid, as Argentina tried to do to NML Capital. It merely has stated that it currently lacks resources to pay the Ex-Im Bank judgment.

At this early stage, the record gives this Court none of the factual history that would permit it to consider injunctive relief, or even properly balance the equities. Argentina is a G-20 country with tens of billions of dollars in reserves. The district court made a specific finding, based on evidence in the record that Argentina could afford to pay NML. 699 F.3d at 263. The record here affords no basis to make such a finding. Rather, the Second Circuit affirmed a finding of breach based upon "the combination of Argentina's executive declarations and legislative enactments" that "have ensured that plaintiffs' beneficial interest do not remain direct, unconditional, unsecured and unsubordinated obligations of [Argentina] and that any claims that

- 11 -

may arise from [Argentina's] restructured debt do have priority in Argentinian courts over" obligations under the NML Capital's bonds.  699 F.3d at 260.  The record discloses no similar executive declarations or legislation subordinating Grenada's obligations here, nor any of the market analysis that was present in *NML Capital*.  *Id* at 259-60.  There has been no suggestion that holders of the Exchange Bonds engaged in inequitable conduct, such as encouraging Grenada to pass a law similar to the Lock Law.  *Id*. at 252.  As Intervenors will develop in their brief on the point, without allegations of a similar "course of conduct," *see id.* at 264 n.16, Ex-Im Bank's *pari passu* claim should ultimately fail.

In short, substantial factual and legal grounds should be presented to this Court as to the requests for relief in the pleadings and in the cross motions.  These arguments should be presented in an orderly fashion, before the Court considers relief on either of the pending motions.  Intervenors submit that they have a right to appear and present those grounds, and in the alternative that they should be permitted to do so.

## CONCLUSION

For the foregoing reasons, Intervenors request that the Court grant their Motion to Intervene.

A/75566578.2

Dated: New York, New York
       May 20, 2013

**BINGHAM McCUTCHEN LLP**


By:     /s/ Timothy B. DeSieno
        Timothy B. DeSieno
        tim.desieno@bingham.com
        Katherine Dobson
        katherine.dobson@bingham.com
        399 Park Avenue
        New York, New York  10022-4689
        (212) 705-7000
        (212) 752-5378

*Of Counsel:*

        Sabin Willett*
        Julia Frost-Davies*
        Samuel R. Rowley*
        One Federal Street
        Boston, MA  02110-1726
        (617) 951-8000

        *Attorneys for Intervenor-Defendants*


* Motions for admission *pro hac vice* have been prepared and will be filed upon issuance from the Massachusetts Supreme Judicial Court of the necessary certificates.

- 13 -