UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                               :

THE EXPORT-IMPORT BANK OF THE REPUBLIC OF   :
CHINA,                         :         13 Civ. 1450 (HB)
                               :

               Plaintiff/Judgment Creditor,   :

               - against -            :
                               :

GRENADA,                             :

               Defendant/Judgment Debtor.   :
                               :
-------------------------------------------------------------------- X


## REPLY MEMORANDUM OF LAW OF GRENADA
## IN SUPPORT OF ITS MOTION FOR
## <u>JUDGMENT ON THE PLEADINGS DISMISSING PLAINTIFF'S COMPLAINT</u>


                            CLEARY GOTTLIEB STEEN & HAMILTON LLP
                            One Liberty Plaza
                            New York, New York 10006
                            (212) 225-2000

                            Attorneys for Defendant Grenada


Of Counsel:

     Boaz S. Morag
     Kristin A. Bresnahan

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

TABLE OF DEFINED TERMS ................................................................................. v

ARGUMENT ............................................................................................................ 1

I.      EX-IM BANK CANNOT AVOID THE MERGER DOCTRINE HERE .......................... 1

II.     RES JUDICATA BARS EX-IM BANK'S CURRENT CLAIMS .................................... 6

CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of New York v. First Millennium Inc.*,
607 F.3d 905 (2d Cir. 2010)..................................................................................... 7

*City of Harper v. Daniels*,
211 F. 57 (8th Cir. 1914) ........................................................................................ 1

*Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.*,
737 F. Supp. 2d 194 (S.D.N.Y. 2010)................................................................... 6, 10

*Coliseum Towers Assocs. v. County of Nassau*,
217 A.D.2d 387 (2d Dep't 1996) ............................................................................ 6, 7

*Counsel Fin. Servs., LLC v. Leibowitz*,
No. 09-cv-1025S, 2012 WL 1057311 (W.D.N.Y. Mar. 27, 2012) ................................ 4, 5

*Craven v. Rigas*,
85 A.D.3d 1524 (3d Dep't 2011), *appeal dismissed*, 17 N.Y.3d 932 (2011) ................... 1

*Ellis v. Abbey & Ellis*,
294 A.D.2d 168 (1st Dep't 2002) ............................................................................ 6-7

*FCS Advisors, Inc. v. Fair Fin. Co.*,
605 F.3d 144 (2d Cir. 2010)..................................................................................... 2

*First Capital Asset Mgmt., Inc. v. N.A. Partners, LP*,
260 A.D.2d 179 (1st Dep't 1999) ............................................................................. 7

*In re A & P Diversified Techs. Realty, Inc.*,
467 F.3d 337 (3d Cir. 2006)..................................................................................... 2-3

*In re Olick*,
221 B.R. 146 (Bankr. E.D. Pa. 1998) ....................................................................... 1

*In re Stendardo*,
991 F.2d 1089 (3d Cir. 1992)................................................................................... 2

*Jay's Stores, Inc. v. Ann Lewis Shops, Inc.*,
15 N.Y.2d 141 (1965) ............................................................................................ 4

*Jean-Gilles v. County of Rockland*,
463 F. Supp. 2d 437 (S.D.N.Y. 2006)....................................................................... 8

                                                                        **Page(s)**

*Klein v. John Hancock Mutual Life Ins. Co.,*
683 F.2d 358 (11th Cir. 1982) ........................................................................... 5

*Maharaj v. Bankamerica Corp.,*
128 F.3d 94 (2d Cir. 1997).......................................................................... 7, 10

*Mallory v. Leach,*
23 How. Pr. 507 (Sup. Ct. N.Y. Cnty. 1862) ................................................... 1

*Marvel Characters, Inc. v. Simon,*
310 F.3d 280 (2d Cir. 2002) ............................................................................ 7

*Mudholkar v. University of Rochester,*
261 F. App'x 320 (2d Cir. 2008) ..................................................................... 8

*NML Capital, Ltd. v. Republic of Argentina,*
17 N.Y.3d 250 (2011) ...................................................................................... 2

*NML Capital, Ltd. v. Republic of Argentina,*
699 F.3d 246 (2d Cir. 2012)........................................................................... 10

*O'Brien v. City of Syracuse,*
54 N.Y.2d 353 (1981) ...................................................................................... 8

*O'Brien v. Young,*
95 N.Y. 428 (1884) .......................................................................................... 2

*Orix Credit Alliance, Inc. v. Horten,*
965 F. Supp. 481 (S.D.N.Y. 1997).................................................................. 3

*Pike v. Freeman,*
266 F.3d 78 (2d Cir. 2001).............................................................................. 7

*Prime Management Co. v. Steinegger,*
904 F.2d 811 (2d Cir. 1990)............................................................................ 5

*S.E.C. v. First Jersey Sec., Inc.,*
101 F.3d 1450 (2d Cir. 1996).......................................................................... 7

*Saud v. Bank of New York,*
929 F.2d 916 (2d Cir. 1991)......................................................................... 7, 9

*Staehr v. Hartford Fin. Servs. Grp., Inc.,*
547 F.3d 406 (2d Cir. 2008)............................................................................ 9

*Storey v. Cello Holdings, LLC,*
347 F.3d 370 (2d Cir. 2003)............................................................................ 7

iii

**Page(s)**

*tenBraak v. Waffle Shops, Inc.*,
542 F.2d 919 (4th Cir. 1976) ................................................................... 5

*Thomas v. Metro. Dist. Comm'n*,
No. 3:04-cv-980 (DJS), 2005 WL 1366453 (D. Conn. June 7, 2005) ............................... 7

*Tucker v. Arthur Andersen & Co.*,
646 F.2d 721 (2d Cir. 1981)................................................................... 7

*Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*,
No. 02 Civ. 1151 (CBM), 2003 WL 42001 (S.D.N.Y. Jan. 6, 2003) ............................... 7

*Williams v. Walsh*,
558 F.2d 667 (2d Cir. 1977)................................................................... 6

**Other Authorities**

Restatement (Second) of Judgments § 26, cmt. g (1982) ................................... 5

## TABLE OF DEFINED TERMS[1]

| | |
|---|---|
| Ex-Im Bank | The Export Import Bank of the Republic of China |
| Grenada Br. | Memorandum of Law of Grenada In Support Of Its Motion For Judgment On The Pleadings Dismissing Plaintiff's Complaint, dated Apr. 17, 2013, ECF No. 15 |
| Judgment | Morag Decl., Ex. H (Action One Amended Judgment), dated Mar. 16, 2007 |
| Loan Agreements | Morag Decl., Exs. N, O, P, Q |
| Memo. For An Order to Show Cause | Memorandum Of Law In Support Of Motion By The Export-Import Bank Of The Republic Of China For An Order To Show Cause Why A Preliminary Injunction Should Not Issue, With A Temporary Restraining Order, ECF No. 3 |
| Morag Decl. | Declaration Of Boaz S. Morag In Support Of Defendant Grenada's Motion For Judgment On The Pleadings, dated Apr. 17, 2013, ECF No. 14 |
| Morag Supp. Decl. | Supplemental Declaration Of Boaz S. Morag In Further Support of Defendant Grenada's Motion For Judgment On The Pleadings, dated May 21, 2013 |
| Notes | Morag Decl., Exs. I, J, K, L |
| Offering Memorandum | Morag Decl., Ex. D |
| Opp. | Memorandum Of Law Of The Export Import Bank Of The Republic Of China In Opposition To Grenada's Motion For Judgment On The Pleadings Dismissing Plaintiff's Complaint And In Support Of Ex-Im Bank's Cross-Motion For Judgment On The Pleadings, dated May 9, 2013, ECF No. 18 |

---

[1] Capitalized terms have the meaning assigned in this Table of Defined Terms or in Grenada's opening brief, dated April 17, 2013, ECF No. 15.

Grenada submits this reply in support of its motion for judgment on the pleadings.  Ex-Im Bank cites not a single case where a holder of a money judgment on an accelerated, unsecured loan was permitted to sue the debtor a second time to enforce a covenant in that loan agreement. That is because the doctrines of res judicata and merger have long barred such claims.

## ARGUMENT

## I.   EX-IM BANK CANNOT AVOID THE MERGER DOCTRINE HERE

Ex-Im Bank fails to address the established rule that in an action on a contract that results in a money judgment for the plaintiff, "the *contract itself* is held to merge with the judgment, thereby depriving a plaintiff from ever again being able to assert claims based on the *terms and provisions of the contractual instrument*."  *In re Olick*, 221 B.R. 146, 152 (Bankr. E.D. Pa. 1998) (emphasis added) (applying the Restatement (Second) of Judgments §§ 17, 18 (1982)).  This rule precludes Ex-Im Bank from now seeking to obtain relief on the basis of provisions of the same Loan Agreements on which it sued and obtained its Judgment in Action One.  *Craven v. Rigas*, 85 A.D.3d 1524, 1527-28 (3d Dep't 2011) ("*Craven II*") (plaintiff that obtained a money judgment on a promissory note, cannot "enforc[e] his rights under the note" through injunctive relief "[b]ecause the promissory note merged into the prior judgment."), *appeal dismissed*, 17 N.Y.3d 932 (2011); *City of Harper v. Daniels*, 211 F. 57, 61 (8th Cir. 1914) ("a judgment on a note or contract merges the note or contract and no other suit can be maintained on the same instrument."); *Mallory v. Leach*, 23 How. Pr. 507, 508-09 (Sup. Ct. N.Y. Cnty. 1862) ("If a judgment be recovered on a note, no action can afterwards be maintained on it, so long as the judgment remains unreversed and in full force and effect.").

There is only one exception to this merger rule and it does not avail Ex-Im Bank.  If the agreement uses "clear, unambiguous and unequivocal language" that the contract provision is

effective post-judgment, then the merger doctrine does not bar a later action to enforce that provision. *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 147 (2d Cir. 2010). *See also In re A & P Diversified Techs. Realty, Inc.* ("*A&P*"), 467 F.3d 337, 341 (3d Cir. 2006) (the Third Circuit applies the same test, looking to whether the agreement "clearly evidences an intent to preserve the effectiveness of [a contract] provision post-judgment") (internal citation omitted). Ex-Im Bank contends that this exception is satisfied here, because in certain of the Loan Agreements, the *pari passu* and negative pledge clauses recite that they apply "until all amounts payable to the Lender hereunder are paid in full," and thus purportedly establish that the "parties contractually agreed to remedies that might accrue post-judgment." Opp. at 9.

But, the verbal formulation "until all amounts payable to the Lender hereunder are paid in full," has been held repeatedly *not* to establish the clear intent necessary to survive the entry of judgment. Back in 1884, the New York Court of Appeals rejected the argument that the interest rate provided in a contract to govern "until the principal shall be paid," continues to apply after the entry of judgment. *O'Brien v. Young*, 95 N.Y. 428, 430 (1884). In 2011, that Court reaffirmed that lending agreement provisions phrased as applying "'until the principal is paid' (or words to that effect)" govern only "*until the contract is merged in the judgment*." *NML Capital, Ltd. v. Republic of Argentina*, 17 N.Y.3d 250, 258-59 (2011) (emphasis added).

Applying this settled principle, the court in *In re Stendardo*, 991 F.2d at 1092, 1095-96, examined a mortgage agreement and could not find "any language" "that indicates the parties' intent to preserve the Debtors' obligation to pay" real estate taxes and insurance premiums due and paid by the creditor *after* the entry of judgment on the mortgage, despite the fact that the mortgage provision included the language "until the said note is fully paid." And in *A&P*, 467 F.3d at 341, 343, a clause that "waived and released the benefit of all laws, regulations, and

judicial decisions," did not "clearly indicate that the debtor's obligations to pay attorneys' fees continued post-judgment," such that after obtaining a final judgment of foreclosure, the merger doctrine barred a later attempt to recover those fees. Thus, each of the provisions of the Loan Agreements Ex-Im Bank now contends provides it a basis for relief against Grenada has been held *not* to survive the entry of judgment.[2]

Unable to satisfy the exception to the merger doctrine, Ex-Im Bank is relegated to arguing that application of the doctrine in this case would be "unjust." It cites several cases for the proposition that courts sometimes "look behind the judgment" and contends that such a "look" in this case would allow Ex-Im Bank to sue to enforce provisions of the Loan Agreements other than the ones it sued on to obtain the Judgment in Action One. Opp. at 21-22. None of these cases involve suing the judgment debtor a second time on the same instrument.

In *Orix Credit Alliance, Inc. v. Horten*, 965 F. Supp. 481, 486 (S.D.N.Y. 1997), Judge Sand rejected a judgment creditor's attempt to rely on the merger of its claims under a lease into a judgment to start anew the limitations period against the guarantor of the lease who was not sued in the prior action against the lessee. The court looked behind the judgment to see that it arose from a lease agreement in holding that the limitations period against both the lessee and guarantor started running at the same time and rejected the argument that, by virtue of the lease merging into the judgment, a new limitations clock began running against the guarantor. *Id.*

---

[2] Where Ex-Im Bank wanted particular terms in the Loan Agreements to remain effective post-judgment, it said so. For example, the First Loan Agreement provides that payment in U.S. Dollars is "of the essence" such that the "payment obligations of the Borrower shall not be discharged by an amount paid in another currency . . . whether pursuant to a *judgement* [sic] or otherwise, to the extent that the amount so paid on prompt conversion to Dollar[s] . . . does not yield the amount of Dollars in New York City due hereunder," in which circumstance, "the Lender shall have a separate cause of action against the Borrower for the additional amount due to it." *E.g.*, First Loan Agreement § 9.11 (emphasis added). Similarly, the consent to jurisdiction, service of process, and sovereign immunity waiver provisions of the Loan Agreements by their terms apply post-judgment. *E.g.*, First Loan Agreement §§ 5.05, 9.06, 9.08.

Similarly, in *Jay's Stores, Inc. v. Ann Lewis Shops, Inc.*, the defendant had executed a contract in New York and was later sued on that agreement in Massachusetts after terminating its operations in New York.  In a suit to enforce the Massachusetts judgment in New York, the court rejected the defendant's challenge to service of process on the New York Secretary of State, available in an action "upon liability or obligation incurred within the State of New York," on the grounds that the New York action was on the judgment and not on the obligation that it had incurred within the State.  15 N.Y.2d 141, 142, 147 (1965).  The court held that the doctrine of merger "does not destroy all of the identifying characteristics" of the underlying obligation.  *Id.* The ability of the court to "look behind the judgment" allows it to examine the nature of the underlying claim in order to make determinations that rely on the nature of that claim in order to determine certain fundamental characteristics of the original instrument (*i.e.* related to the statute of limitations, service of process provisions, etc.).  It does not give the court free rein to pick and choose when to apply the merger doctrine, as Ex-Im Bank's position implies.

Finally, *Counsel Fin. Servs., LLC v. Leibowitz*, No. 09-cv-1025S, 2012 WL 1057311 (W.D.N.Y. Mar. 27, 2012), on which Ex-Im Bank relies heavily, is readily distinguishable.  Opp. at 20-21.  Counsel Financial Services ("CFS") lent attorney Leibowitz $5,000,000, not on an unsecured basis as Ex-Im Bank did here, but subject to a Security Agreement.  When Leibowitz failed to timely repay the loan evidenced by a promissory note, CFS sued and obtained a money judgment on the note for principal, interest and attorneys' fees through the date of judgment. The Security Agreement, however, remained in effect.  After entry of the money judgment, Leibowitz allegedly violated the Security Agreement by opposing CFS's intervention in a lawsuit in Texas to assert a lien on fees expected to be owed to Leibowitz and by seeking to countersue CFS in Texas in contravention of his agreement to sue CFS only in New York.

4

CFS then sued Leibowitz in New York for violating the forum selection clause of the Security Agreement to recover its costs of defending Leibowitz's claims in Texas. The court determined that the doctrine of merger did not bar CFS's second suit because the violation of the forum selection clause occurred *after* the judgment and constituted a violation of the Security Agreement separate from the obligation to repay the promissory note. *Id.* at *4. Judge Skretny relied on *Prime Management Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990), where the rejection of the res judicata defense turned on the fact that the parties were engaged in a long-term contract under which both parties had continuing obligations, and the subsequent breach at issue "had not occurred when the first suit was brought." Like *Prime Management*, *Counsel Financial* involved a related, but separate contract (the Security Agreement) that remained subject to ongoing performance such that the breach of the Security Agreement after entry of judgment was a "new" cause of action and not precluded by merger or res judicata.

*Counsel Financial* is thus analogous to the cases cited by Ex-Im Bank involving long-term continuing contracts, under which obligations exist post-judgment, and none of which apply here.[3] That is because a "judgment in an action for breach of contract does not normally preclude the plaintiff from thereafter maintaining an action for breaches of the same contract that consist of *failure to render performance due after commencement of the first action.*" Restatement (Second) of Judgments § 26, cmt. g (1982) (emphasis added). Here, no additional performance was due once Ex-Im Bank chose to accelerate the debt owed under the Loan Agreements and to obtain a money judgment. At that point, all covenants not explicitly stated to survive as continuing obligations merged into the Judgment.

---

[3] *tenBraak v. Waffle Shops, Inc.*, 542 F.2d 919, 924 n.6 (4th Cir. 1976); *Klein v. John Hancock Mutual Life Ins. Co.*, 683 F.2d 358, 360 (11th Cir. 1982).

## II.    RES JUDICATA BARS EX-IM BANK'S CURRENT CLAIMS

In seeking to avoid the bar of res judicata, Ex-Im Bank erroneously argues that "[e]very breach of the *pari passu* clause and the restrictive covenant constitutes a new cause of action, and accrues anew."  Opp. at 11.  "A cause of action is a situation or state of facts which entitles a party to sustain an action and gives him the right to seek judicial interference in his behalf." *Williams v. Walsh*, 558 F.2d 667, 670 (2d Cir. 1977).  The money judgment obtained in Action One and the injunctive relief sought in Action Two are not separate causes of action, but are at best two remedies for the same wrong (which is why the injunction sought is by its terms a prohibition on Grenada making payments on any External Indebtedness without a ratable payment to Ex-Im Bank for so long as the Judgment is not satisfied in full).  *See Coliseum Towers Assocs. v. County of Nassau*, 217 A.D.2d 387, 390 (2d Dep't 1996) ("a claim or cause of action is coterminous with the transaction regardless of the number of substantive theories or variant forms of relief available to the plaintiff") (internal citations omitted); *see also Williams*, 558 F.2d at 671 ("most definitely, the cause of action is something distinct from the remedy or the relief sought," and "the independent remedies of a damage award and injunctive relief do not constitute separate 'causes of action'") (internal citations omitted).  A claim for relief with respect to a pleaded cause of action may be sought until the entry of judgment, but once judgment is entered, res judicata bars such relief.  *Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.*, 737 F. Supp. 2d 194, 208 (S.D.N.Y. 2010).

Even if Ex-Im Bank were now asserting a separate cause of action, which it is not, it was able and therefore required to bring its claims for injunctive relief in Action One.  *See Ellis v. Abbey & Ellis*, 294 A.D.2d 168, 170 (1st Dep't 2002) ("It is irrelevant that plaintiff did not raise the contract claim in the earlier action; what is material is that it could have been raised but was

6

not.")[4]  Assuming *arguendo* that Ex-Im Bank were pursuing a separate cause of action in Action

Two, and that for the purposes of res judicata, "the complaint at the time it is filed" determines

the scope of res judicata,  *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*, No. 02 Civ. 1151

(CBM), 2003 WL 42001, at *10 (S.D.N.Y. Jan. 6, 2003),  it is "the *factual* predicate of the

several claims asserted that determines whether *res judicata* will apply, not a litigant's ability to

devise a new legal theory."  *Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991)

(holding that plaintiff had "sufficient notice" of the relevant facts at the time he filed his first

action such that his second action was precluded).  Therefore, "if the rights in question had

already attached [at the time the first complaint was filed], and plaintiff merely came upon new

evidence which might support another claim in the first action," res judicata will properly apply

to preclude those rights.  *Well-Made Toy Mfg. Corp.*, 2003 WL 42001, at *10.  The only

exception to this rule is when "the evidence was either fraudulently concealed or when it could

not have been discovered with due diligence."  *Saud*, 929 F.2d at 920.

     In this case, all rights Ex-Im Bank had under the Loan Agreements and Notes attached

before the Action One Complaint was filed on March 29, 2006.  At that time, Grenada was in

default for over a year on Ex-Im Bank's loans, it had publicly announced the 2005 debt

---

[4] In arguing otherwise, Ex-Im Bank improperly relies only on cases that involve an entirely new cause of action that could not have possibly been brought in the first action and which arose after the initial action was brought.  *See, e.g.*, *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 383 (2d Cir. 2003) (res judicata did not preclude a subsequent claim premised on new conduct arising after the initial action where the claims at issue "did not even then exist and which could not possibly have been sued upon in the previous case"); *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996); *Bank of New York v. First Millennium Inc.*, 607 F.3d 905, 919 (2d Cir. 2010); *Thomas v. Metro. Dist. Comm'n*, No. 3:04-cv-980 (DJS), 2005 WL 1366453, at *2 (D. Conn. June 7, 2005); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997); *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002); *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 728 (2d Cir. 1981); *First Capital Asset Mgmt., Inc. v. N.A. Partners, LP*, 260 A.D.2d 179, 181 (1st Dep't 1999); *Coliseum Towers Assocs.*, 217 A.D.2d at 392.

restructuring, and it had made at least one payment on its External Indebtedness.  Ex-Im Bank

could have and should have brought any claims based on its alleged *pari passu* rights at that time.

If, as Ex-Im Bank insists (and Grenada disputes), each payment to external creditors in which it

did not share, coupled with Grenada's September 2005 statement that Grenada did "not intend to

pay any non-tendered Eligible Claims unless resources become available to do so,"[5] constitute a

breach of the *pari passu* clause, Opp. at 11, then it could have asserted this claim in its Action

One Complaint.

"[T]he doctrine [of res judicata] applies to facts learned after the filing of the earlier

complaint when such facts are merely 'additional examples'" of conduct that occurred prior to

the filing of the complaint.  *Jean-Gilles v. County of Rockland*, 463 F. Supp. 2d 437, 454

(S.D.N.Y. 2006) (citation omitted); *see also Mudholkar v. University of Rochester*, 261 F. App'x

320, 322 (2d Cir. 2008) ("Allegations challenging the continuing disparate effects of

discriminatory conduct," where such discriminatory conduct had occurred prior to the filing of

the first action, "do not constitute allegations of a new violations [sic]").[6]  Grenada's later

payments on its External Indebtedness following the filing of the Action One Complaint per the

schedule disclosed in September 2005 were merely "additional examples" of conduct allegedly

violative of the *pari passu* clause that occurred prior to the Action One Complaint, and thus

cannot support a new cause of action by Ex-Im Bank.

---

[5] Ex. D (Offering Memorandum) at 18.

[6] Ex-Im Bank contends that because different evidence is required to prove its claims in Action
Two than in Action One, res judicata does not preclude Action Two.  Opp. at 16.  This is an
incorrect statement of the law.  As explained in Grenada's opening brief, even where two causes
of action require materially different elements of proof, and thus different evidence, there can be
no justification for presenting those theories in separate actions.  *O'Brien v. City of Syracuse*, 54
N.Y.2d 353, 356-57 (1981) *overruling Smith v. Kirkpatrick*, 305 N.Y. 66 (1953).

Nor can Ex-Im Bank contend that it can satisfy either of the two showings it would have to make to justify any claimed ignorance of these relevant facts at the time Action One was brought, namely that "the evidence was either fraudulently concealed or . . . could not have been discovered with due diligence." *Saud*, 929 F.2d at 920.  Grenada's 2005 debt restructuring was done in the public eye and Ex-Im Bank itself admitted that it "chose not to seek to participate in the [2005 debt] restructuring."  Memo. For An Order to Show Cause at 6, ECF No. 3.   Ex-Im Bank also alleges that "there is public information about [its external debt] arrangements." *Id.* at 5.  By these statements, Ex-Im Bank acknowledges that at the time of the 2005 restructuring it (a) learned from public information of its existence,[7] and (b) knew enough about the terms of that restructuring that it chose "not to seek to participate" in it. *Id.* at 6.  Ex-Im Bank thus certainly had "sufficient notice" of the relevant facts now at issue in its Action Two Complaint, namely that Grenada had restructured its outstanding commercial debt, that it had made a payment on that new debt and was scheduled to do so regularly in the future, and that it did not plan to pay creditors holding Eligible Claims that had not been restructured unless resources became available to do so.  *See* Action Two Compl. ¶¶ 19, 22, 23, ECF No. 1.[8]

---

[7] At the time Ex-Im Bank filed its Action One Complaint there was substantial publicly available information regarding Grenada's restructuring.  *See* Morag Supp. Decl. at ¶¶ 5-7.

[8] Ex-Im Bank's complaint that "Grenada relies on 'facts' that are 'proved' by counsels' naked assertions in a memorandum," Opp. at 1, is unfounded.  Grenada simply presents the Court with information that was publicly available at the time Ex-Im Bank filed its Action One Complaint. This is significant, given that in order for Ex-Im Bank to argue that it did not know about those facts, it must be able to show that such evidence "was either fraudulently concealed" or "could not have been discovered with due diligence." *Saud*, 929 F.2d at 920.  Given that test, the fact and extent of publicly available information may be considered on a Rule 12(b)(6) or 12(c) motion.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information [to show that the information was publicly available], without regard to the truth of their contents" in deciding a motion to dismiss).

Ex-Im Bank contends that because in 2012 the Second Circuit, in *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 264 n.16 (2d Cir. 2012), affirmed a *pari passu* injunction based on a finding that Argentina had engaged in a certain "course of conduct," Ex-Im Bank could not have sought relief from Grenada in 2006.  Opp. at 14.  In *NML*, the creditor had not obtained a judgment on the bonds on which it was suing precisely to avoid the defenses of merger and res judicata being asserted against it.  *See* Morag Supp. Decl. ¶¶ 2-4.  Moreover, Ex-Im Bank overstates the Second Circuit's decision, as the court went out of its way to avoid delineating the test for what constitutes a violation of the *pari passu* clause and "simply affirm[ed]" the district court's finding that Argentina had violated it.  *NML*, 699 F.3d at 264 n.16.[9]

Finally, for Ex-Im Bank's position to have merit, it would need to point to precedent existing as of 2006 that required a "course of conduct" as a precondition to the entry of a *pari passu* injunction.  Absent such precedent, Ex-Im Bank's argument is merely that it would have been unlikely to prevail had it sought relief in 2006; that its claim may have been weak in 2006—as we say it is today—does not establish that it could not have been brought.  *See Coalition for a Level Playing Field*, 737 F. Supp. 2d at 208 (the "crucial point" in res judicata analysis is whether the claim "could have been brought as part of [the initial] action," not whether the plaintiff "could . . . have won" the relief requested had it been sought in the initial action).

---

[9] Likewise, Ex-Im Bank's statement that its claim for equitable relief was not "viable" at the time it filed its Complaint in Action One is incorrect.  The case it relies on for that proposition, *Maharaj*, 128 F.3d at 98, simply held that res judicata did not preclude a claim that arose based on an event that occurred after the complaint in the first action was filed and that could not have been brought at the time the complaint in the first action was filed.  That is not the situation in the instant case.

**CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  New York, New York
        May 21, 2013

                            Respectfully submitted,

                            CLEARY GOTTLIEB STEEN & HAMILTON LLP


                            By: ____/s/ Boaz S. Morag_____
                                Boaz S. Morag (bmorag@cgsh.com)

*Of Counsel:*
Kristin A. Bresnahan


                            One Liberty Plaza
                            New York, New York 10006
                            (212) 225-2000

                            Attorneys for Grenada

11