UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                             :

THE EXPORT-IMPORT BANK OF THE REPUBLIC OF :
CHINA,                                        :         13 Civ. 1450 (HB)

                          :

               Plaintiff/Judgment Creditor,   :

                          :

                 - against -               :

                          :

GRENADA,                                  :

                          :

              Defendant/Judgment Debtor.  :

------------------------------------------------------------------- X

**MEMORANDUM OF LAW OF GRENADA**
**IN OPPOSITION TO THE**
**EXPORT-IMPORT BANK OF THE REPUBLIC OF CHINA'S**
**<u>MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS</u>**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant Grenada

Of Counsel:

Boaz S. Morag
Kristin A. Bresnahan

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................ 3

ARGUMENT ............................................................................................................. 7

I.  EX-IM BANK IS NOT ENTITLED TO DECLARATORY RELIEF .................. 7

    A.  Ex-Im Bank Has Already Invoked Its Right To A Remedy ......................... 9

    B.  Ex-Im Bank Is Seeking A Declaration As To Past Conduct ....................... 10

    C.  Declaratory Relief Is Neither Useful Nor Necessary .................................. 11

II.  EX-IM BANK HAS NOT ESTABLISHED A PAST BREACH
    OF THE PARI PASSU CLAUSE .................................................................... 13

CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*242 Partners, L.P. v. Gelb,*
No. 12 CV 2561 (HB), 2012 WL 2309060 (S.D.N.Y. June 18, 2012)..............................   8

*Authors Guild, Inc. v. HathiTrust,*
902 F. Supp. 2d 445 (S.D.N.Y. 2012)...................................................................................   7

*Bernstein/Glazer, LLC v. Babbitt,*
No. 99 CIV. 1195 JGK, 2000 WL 322778 (S.D.N.Y. Mar. 28, 2000)..............................   7

*Camofi Master LDC v. College P'ship, Inc.,*
452 F. Supp. 2d 462 (S.D.N.Y. 2006)..................................................................................   9

*Chiste v. Hotels.com L.P.,*
756 F. Supp. 2d 382 (S.D.N.Y. 2010)..................................................................................   10

*Crane v. Poetic Prods. Ltd.,*
351 F. App'x 516 (2d Cir. 2009) .........................................................................................   9

*Dow Jones & Co. v. Harrods Ltd.,*
346 F.3d 357 (2d Cir. 2003)..................................................................................................   8

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,*
411 F.3d 384 (2d Cir. 2005)..................................................................................................   8

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.,*
735 F. Supp. 581 (S.D.N.Y. 1990).......................................................................................   8

*In re Combustion Equip. Assocs., Inc.,*
838 F.2d 35 (2d Cir. 1988)....................................................................................................   10

*In re Enron Corp.,*
297 B.R. 382 (Bankr. S.D.N.Y. 2003) ..............................................................................   10-11

*Lojan v. Crumbsie,*
No. 12 CV 0320 (LAP), 2013 WL 411356 (S.D.N.Y. Feb. 1, 2013) ...............................   11

*Mars Adver. Europe Ltd. v. Young & Rubicam, Inc.,*
No. 13 Civ. 0401 (CM), 2013 WL 1790896 (S.D.N.Y. Apr. 24, 2013).........................   9

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Grp., Inc.,*
No. 02 Civ. 10338 (SAS), 2003 WL 21277114 (S.D.N.Y. June 2, 2003).......................   11

*NML Capital, Ltd. v. Republic of Argentina,*
699 F.3d 246 (2d Cir. 2012)..................................................................................   *passim*

*Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*,
No. 08 Civ. 10578 (RJS), 2010 WL 1257326 (S.D.N.Y. Mar. 12, 2010) .......................... 9

*S.E.C. v. Credit Bancorp, Ltd.*,
738 F. Supp. 2d 376 (S.D.N.Y. 2010) .................................................................. 10

*Sellers v. M.C. Floor Crafters, Inc.*,
842 F.2d 639 (2d Cir. 1988) ............................................................................ 2, 7

*Shain v. Ellison*,
356 F.3d 211 (2d Cir. 2004) ............................................................................ 11

*Summit Props. Int'l, LLC v. Ladies Prof'l Golf Ass'n*,
No. 07 Civ. 10407 (LBS), 2010 WL 2382405 (S.D.N.Y. June 14, 2010) ....................... 9

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*,
694 F.3d 155 (2d Cir. 2012) ............................................................................ 11-12

**Rules & Statues**

Fed R. Civ. P. 57 advisory committee's note ................................................... 12

**Other Authorities**

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
Fed. Prac. & Proc. § 2759 (3d ed. 2005) ........................................................ 12

Lee Buchheit, *How to Negotiate Eurocurrency Loan Agreements* (2d ed. 2006) ............. 2

Lee C. Buchheit & Ralph Resiner, *The Effect of the Sovereign Debt Restructuring Process on Inter-Creditor Relationships*, 1988 Univ. Ill. L. Rev. 493 (1988) ................. 17

Philip R. Wood, *Pari Passu Clauses – What Do They Mean?*,
Butterworths J. of Int'l Banking and Fin. L. 371 (2003) ................................... 17

Richard Wight with Warren Cooke & Richard Gray, *The LSTA's Complete Credit Agreement Guide* (2009) ...................................................... 18

Defendant Grenada respectfully submits this memorandum of law in opposition to the Export-Import Bank of the Republic of China's ("Ex-Im Bank") cross-motion pursuant to Federal Rule of Civil Procedure 12(c) for partial judgment on the pleadings, ECF No. 18.

## PRELIMINARY STATEMENT

In the first action between these parties arising under the four loan agreements executed by Ex-Im Bank and Grenada (the "Loan Agreements"), Ex-Im Bank obtained a money judgment for the full amount of its claims under the Loan Agreements in 2007 ("Action One"). In March 2013, six years later, Ex-Im Bank filed a new complaint (the "Complaint") pursuing additional relief under the Loan Agreements, this time seeking a permanent injunction allegedly designed to ensure specific performance of two covenants in the Loan Agreements, the *pari passu* clause and negative pledge clause ("Action Two"). Compl. ¶ 35. On April 17, 2013, Grenada answered Ex-Im Bank's Complaint (the "Answer"), and moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) to dismiss the Complaint based on the doctrines of res judicata and merger. Ex-Im Bank opposed that motion (the "Opposition"), and appended to its Opposition what it styled a cross-motion for judgment on the pleadings (the "Cross-Motion"). The Court, of course, need not consider that Cross-Motion or any other matter going to the purported merits of Action Two if it finds, as it should, that dismissal of the Complaint under the doctrines of res judicata or merger is appropriate.

In any event, Ex-Im Bank's Cross-Motion should be denied. In its Cross-Motion, Ex-Im Bank seeks what amounts to an interim declaration that Grenada defaulted in the past on its obligations under the Loan Agreements—relief not sought in the Complaint that, presumably, would apply while Ex-Im Bank continues its piecemeal adjudication of this dispute and until it is ready to request some form of equitable or final declaratory relief. Ex-Im Bank specifically

seeks "only an order establishing Grenada's liability [for its violation of the *pari passu* and negative pledge clauses in the Loan Agreements]; it is not requesting, at this time, that the Court craft the equitable remedy to which Ex-Im Bank is entitled."[1]  Cross-Motion at 23.  Ex-Im Bank does not move for summary judgment or indeed seek a judgment, declaratory or otherwise, nor does Ex-Im Bank request a remedy for the alleged violation it asserts.  *Id*.  Preliminary injunctions, and the strict standards applicable to them, are a recognized form of relief, but a "preliminary declaration of liability" that is not sought by a motion for partial summary judgment is a creature unknown to federal civil procedure.

To succeed in a motion for judgment on the pleadings, the moving party must demonstrate that "a judgment on the merits is possible merely by considering the contents of the pleadings."  *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  Ex-Im Bank's request for an interim declaration is meritless because Ex-Im Bank did not plead in its Complaint facts that support an allegation that Grenada breached the *pari passu* or the negative pledge clauses and because Grenada, in its Answer, denies that any such breach occurred.  Rather, in support of its Cross-Motion, Ex-Im Bank alleges only that Grenada admitted it made payments to other creditors without making payments to Ex-Im Bank and implies that the Offering Memorandum accompanying Grenada's 2005 debt restructuring evinced an intention not to pay Ex-Im Bank in the future.  Compl. ¶¶ 19, 22-23.

---

[1] Although Ex-Im Bank's Cross-Motion and Complaint refer to claims under two Loan Agreement clauses, the *pari passu* clauses and the negative pledge clauses (the latter of which Ex-Im Bank refers to at times as "restrictive covenants" and at times as "negative covenants"), Ex-Im Bank's Cross-Motion does not distinguish between the two.  This is hardly surprising: negative pledge clauses deal with the grant of security, and there is no allegation either that the debt owed to Ex-Im Bank under the Loan Agreements or any of the restructured debt is secured.  *See* Lee Buchheit, *How to Negotiate Eurocurrency Loan Agreements* 86-87 (2d ed. 2006).  Ex-Im Bank does not point to any facts relevant to negative pledge clauses, nor does it cite to case law interpreting them.  Grenada will respond to the Cross-Motion in kind and direct its arguments solely to the *pari passu* clause.

These allegations fail to support even a facial claim that Grenada breached the *pari passu* clause.  Payments to some creditors and not others, without legal ranking or subordination, do not violate a *pari passu* clause.  Further, the documentary evidence incorporated into Ex-Im Bank's Complaint clearly indicates that the terms of the Offering Memorandum did *not* apply to the Grenadian debt held by Ex-Im Bank.

Finally, even if Ex-Im Bank had pleaded a meritorious claim, it would be barred on three additional grounds.  First, Ex-Im Bank has already sought relief in the form of a permanent injunction for specific performance of the *pari passu* and negative pledge clauses, making declaratory relief, in addition, unnecessary and inappropriate.  Second, declaratory relief such as the interim declaration Ex-Im Bank seeks is appropriate only in relation to future conduct, not the past conduct of which Ex-Im Bank complains.  Third, an interim declaration would serve no useful purpose:  it would be simply an advisory opinion that would not advance the litigation of the permanent injunction remedy that Ex-Im Bank did seek in its Complaint.

## BACKGROUND

Between 1990 and 2000, Ex-Im Bank and Grenada executed four Loan Agreements by which Grenada borrowed a total of $28,000,000 from Ex-Im Bank.  *See* Compl. ¶ 6.  After Hurricanes Ivan and Emily crippled the Grenadian economy, Grenada was forced to restructure its external and internal public debt.  Grenada Motion for Judgment on the Pleadings ("Grenada Motion") at 4, ECF No. 15.  In 2005, Grenada offered to restructure its commercial debt (the "2005 Debt Restructuring"), an offer "most of Grenada's eligible external debtholders accepted," Compl. ¶ 17, but Ex-Im Bank did not.  In 2006, Grenada received debt relief from the Paris Club leading to "the rescheduling of its obligations to bilateral creditors including Belgium, the United Kingdom, the United States, and France."  *Id*. ¶ 21.  Thereafter, Grenada made payments to

sovereign or official creditors on its external debt, as well as to holders of its restructured debt. *Id*. ¶¶ 22-23.  On March 16, 2007, in Action One, this Court entered an amended judgment in favor of Ex-Im Bank and against Grenada, allegedly "in connection with four multi-million dollar promissory notes executed by Grenada in favor of Ex-Im Bank pursuant to the Loan Agreements."  *Id*. ¶ 7.

Ex-Im Bank's Complaint in Action Two

Ex-Im Bank's Action Two Complaint seeks a judgment against Grenada specifically enforcing by way of a permanent injunction the *pari passu* and negative pledge clauses in the Loan Agreements.  *Id*.  Prayer For Relief (1).  As the sole basis for this claim, Ex-Im Bank alleges that (1) Grenada has made interest payments to holders of bonds arising from the 2005 Debt Restructuring, *id*. ¶¶ 22-23; (2) Grenada has made interest payments to other sovereign bilateral creditors in connection with the Paris Club restructurings, *id*.; and (3) Grenada's Offering Memorandum for the 2005 Debt Restructuring (the "Offering Memorandum") "stated plainly that Grenada did *not intend to pay* any debt that elected not to restructure unless resources became available to do so.  In addition, Grenada stated that it did *not intend to pay* any amount in respect of any debt that elected not to restructure if, at the time such payment is due, a payment default then existed under any new bond issued in the exchange."  *Id*. ¶ 19.

Grenada's Answer

In its Answer, Grenada admitted making payments to sovereign or official creditors and for the benefit of the holders of its outstanding bonds, Answer ¶¶ 22-23, but Grenada denied any past breach, as well as Ex-Im Bank's allegations pertaining to the alleged subordination supposedly reflected in the Offering Memorandum.  *Id*. at ¶ 19.  In particular, with regard to ¶ 19

of the Complaint, quoted above, Grenada denied the allegations because they are not a correct

statement of what the Offering Memorandum actually says.  The Offering Memorandum states:

> Grenada does not intend to pay any non-tendered Eligible Claims unless resources
> become available to do so.  In addition, Grenada does not intend to pay any
> amount in respect of a non-tendered Eligible Claim if, at the time such payment is
> due, a payment default then exists under any New Bond.

Offering Memorandum (Ex. D) at 18.[2]  "Eligible Claims" is a defined term in the Offering

Memorandum that refers collectively to Schedule A Claims and Schedule B Claims, which

Schedule A and Schedule B list the claims eligible to restructure.  *Id.* at A-1-A2, B-1-B-2.  Ex-

Im Bank's claims are not among those listed in the Schedules, so the Offering Memorandum—

contrary to what is alleged in ¶ 19 of the Complaint—did not apply to Ex-Im Bank and therefore

was denied in ¶ 19 of the Answer.[3]  As set forth in Grenada's motion for judgment on the

pleadings, "Grenada disagrees that Ex-Im Bank held an Eligible Claim, which claims were

individually listed in two schedules to the 2005 Offering Memorandum and do not include Ex-Im

Bank's claim."  Grenada Motion at 7 n.3.

Nevertheless, in its Cross-Motion, Ex-Im Bank ignores Grenada's denial and surgically

quotes the following language from the Offering Memorandum, making liberal use of bracketed

text that it inserts in an attempt to bring the debt Ex-Im Bank held within the Offering

Memorandum's terms:

> Grenada does not intend to pay any non-tendered Eligible Claims [that is, debt
> that elected not to restructure] unless resources become available to do so.  In
> addition, Grenada does not intend to pay any amount in respect of a non-tendered

---

[2] All citations to "Ex. __" refer to exhibits to the Declaration of Boaz S. Morag dated April 17,
2013 submitted in support of Grenada's motion for judgment on the pleadings, ECF No. 14.

[3] Ex-Im Bank is a 100% state-owned bank and is supervised by Taiwan's Ministry of Finance.
"Therefore, Ex-Im Bank's debt could and should have been restructured in direct state-to-state
negotiations between the governments of Taiwan and Grenada, as the members of the Paris Club
did in 2006."  Grenada Motion at 7 n.3.

> Eligible Claim if, at the time such payment is due, a payment default then exists under any New Bond [that is, any new bond issued in the exchange].

Cross-Motion at 24.  In fact, the full text of the document shows that those who have "Eligible Claims" to which the Offering Memorandum applies are not necessarily those, like Ex-Im Bank, who hold debt that was not subject to the 2005 Debt Restructuring.

Even apart from Grenada's denial, which itself precludes a judgment on the pleadings against it (we repeat, Ex-Im Bank has *not* sought to move for summary judgment or presented a Rule 56.1 Statement or any evidence that would support such relief), the Offering Memorandum would not support Ex-Im Bank's Cross-Motion or show violation of the *pari passu* clause.  First, nothing in the Offering Memorandum demonstrates legal subordination or ranking of debt, as required by the only authority Ex-Im Bank cites, *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012), for violation of a *pari passu* clause.  Second, even if the Offering Memorandum did legally subordinate debt, as explained above, it did not apply to the debt held by Ex-Im Bank.

Other than quoting the inapplicable Offering Memorandum, Ex-Im Bank's Complaint does not make any allegation that the debt owed Ex-Im Bank was legally subordinated to the claims of other creditors.  The Complaint fails to allege, even in conclusory terms, that there was either de facto or de jure subordination, which the Second Circuit found necessary for finding a violation of a *pari passu* clause in *NML*.  699 F.3d at 250.

In addition to denying allegations based on the Offering Memorandum, Grenada's Answer also interposed a series of affirmative defenses, many of which—including merger and res judicata, laches, and that Ex-Im Bank has failed to plead facts suggesting a substantial threat of irreparable injury—Ex-Im Bank's Cross-Motion does not address.  It therefore cannot be a

basis for rejecting these defenses as a matter of law, as would be required to grant a rule 12(c)

motion in Ex-Im Bank's favor on the claims pleaded in the Complaint.

## ARGUMENT

Ex-Im Bank moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

Cross-Motion at 23.  In deciding a 12(c) motion, courts "must view the pleadings in the light

most favorable to, and draw all reasonable inferences in favor of, the nonmoving party."

*Bernstein/Glazer, LLC v. Babbitt*, No. 99 CIV. 1195 JGK, 2000 WL 322778, at *3 (S.D.N.Y.

Mar. 28, 2000) (citing *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)).  Plaintiffs are only

entitled to judgment on the pleadings "where material facts are undisputed and where a judgment

on the merits is possible merely by considering the contents of the pleadings."  *M.C. Floor*

*Crafters*, 842 F.2d at 642; *Authors Guild, Inc. v. HathiTrust*, 902 F. Supp. 2d 445, 456 (S.D.N.Y.

2012) (Baer, J.) ("A party is entitled to judgment on the pleadings only if it is clear that no

material issues of fact remain to be resolved and that it is entitled to judgment as a matter of

law." (citation and internal quotation marks omitted)).

## I.      EX-IM BANK IS NOT ENTITLED TO DECLARATORY RELIEF

Ex-Im Bank's request for "interim" declaratory relief based on alleged past violations of

the *pari passu* and negative pledge clauses in the Loan Agreements is patently improper as a

matter of basic civil procedure.  Ex-Im Bank's Complaint does not seek a declaratory judgment

or any other form of declaratory relief.  Its Cross-Motion seeking "an order establishing

Grenada's liability for violations of the *pari passu* clauses and restrictive covenants of the Loan

Agreements" seems therefore, if it is anything, to be an attempt to obtain summary judgment on

an unpleaded claim, without either a Rule 56.1 Statement, evidence, or any of the other

necessary predicates for a summary judgment motion.  Cross-Motion at 25.  It should be denied

for this reason alone.  However, even if the Court overlooks these failures, the Cross-Motion should be denied because it violates basic principles governing the grant of declaratory relief.

Courts have consistently interpreted the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).  In determining whether to grant declaratory relief, district courts ask, "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).  In applying this standard, "the Court must look at the litigation situation as a whole in determining whether it is appropriate for the Court to exercise its jurisdiction over the declaratory judgment action before it." *242 Partners, L.P. v. Gelb*, No. 12 CV 2561 (HB), 2012 WL 2309060, at *3 (S.D.N.Y. June 18, 2012) (Baer, J.).  *See also Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990) (refusing to grant declaratory relief after examining "the history of the litigation between the parties.").

Entertaining Ex-Im Bank's motion for declaratory relief would confer neither clarity nor finality on the dispute between Grenada and Ex-Im Bank, nor, in light of the history of this litigation, would entertaining Ex-Im Bank's motion be useful, relevant, or appropriate.  The Court should decline to consider Ex-Im Bank's motion for declaratory relief because (1) Ex-Im Bank has already invoked its right to a remedy in the form of injunctive relief for alleged violations of the Loan Agreements; (2) Ex-Im Bank is seeking to adjudicate past conduct which is an inappropriate use of declaratory relief; and (3) declaratory relief is unnecessary to and would be ineffective in settling the legal conflict between Grenada and Ex-Im Bank.

### A.       Ex-Im Bank Has Already Invoked Its Right To A Remedy

Declaratory relief is inappropriate where a party has already invoked its right to a remedy

for an alleged violation of a contract.  The "purpose of a declaratory judgment is to clarify and

settle disputed legal relationships and to relieve uncertainty, insecurity, and controversy."  *Crane*

*v. Poetic Prods. Ltd.*, 351 F. App'x 516, 518 (2d Cir. 2009).  If the party seeking an interim

declaration has already sought a coercive remedy, granting declaratory relief is unnecessary and

redundant.  *Mars Adver. Europe Ltd. v. Young & Rubicam, Inc.*, No. 13 Civ. 0401 (CM), 2013

WL 1790896, at *11 (S.D.N.Y. Apr. 24, 2013) ("A claim for declaratory judgment interpreting a

contract provision does not lie when that provision will necessarily be interpreted during the

course of litigation [over the alleged breach].");  *Summit Props. Int'l, LLC v. Ladies Prof'l Golf*

*Ass'n*, No. 07 Civ. 10407 (LBS), 2010 WL 2382405, at *6 (S.D.N.Y. June 14, 2010) (dismissing

a claim for declaratory relief because the plaintiff "has chosen to litigate its rights through its

breach of contract claim . . . [t]he issue of [defendant's] alleged breach, and the parties'

obligation to each other, will be resolved in the context of the breach of contract claims.");  *Piven*

*v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08 Civ. 10578 (RJS), 2010 WL 1257326,

at *11 (S.D.N.Y. Mar. 12, 2010) ("As Plaintiffs have already sought coercive relief arising out of

the same issues as the request for declaratory judgment, Plaintiffs' request for declaratory

judgment is duplicative of their other claims and therefore unnecessary.");  *Camofi Master LDC*

*v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (dismissing a claim for

declaratory relief because "[t]he parties have already chosen to pursue their coercive remedies.").

Ex-Im Bank's Complaint alleges that Grenada breached provisions of the Loan

Agreements, requests a permanent injunction, and "demands judgment against Grenada . . .

specifically enforcing the *pari passu* clauses and the negative covenant against granting

9

preferential treatment arrangements to other creditors."  Compl. at 7, Prayer for Relief (1).  The

Court will interpret the contractual provisions relevant to this claim of breach, if it survives

Grenada's 12(c) motion, in the course of adjudicating the parties' dispute over whether any

future action by Grenada will violate them.  Rather than contribute to clarity and finality,

entertaining Ex-Im Bank's motion for an interim declaration to establish "Grenada's liability for

violations of the *pari passu* and restrictive covenant clauses" in the past, Cross-Motion at 23, is

unnecessary given Ex-Im Bank's claim for a coercive remedy based on the same provisions of

the Loan Agreements.

### B.      Ex-Im Bank Is Seeking A Declaration As To Past Conduct

 "The purpose of the [Declaratory Judgment] Act is to enable parties to adjudicate

disputes *before* either side suffers great damage."  *In re Combustion Equip. Assocs., Inc.*, 838

F.2d 35, 37 (2d Cir. 1988) (emphasis added).  Here, however, Ex-Im Bank's Cross-Motion seeks

an interim declaration only with respect to past conduct.

Ex-Im Bank requests "an order establishing Grenada's liability" for alleged violations of

the *pari passu* and negative pledge clauses that have already occurred, seeking to analogize *NML*

to the past conduct "Grenada has exhibited here"; arguing that Grenada "has violated" the Loan

Agreements; and contending that Grenada "has admitted its violations."  Cross-Motion at 23-24.

But entertaining a motion for "declaratory judgment is inappropriate where the moving party

seeks to adjudicate past conduct."  *S.E.C. v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 388

(S.D.N.Y. 2010).  *See also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010)

(dismissing a claim seeking, *inter alia*, declaratory judgment establishing breach of contract

because "there is no basis for declaratory relief where only past acts are involved." (citation

omitted)); *In re Enron Corp.*, 297 B.R. 382 (Bankr. S.D.N.Y. 2003) ("Given the [Declaratory

Judgment Act's] fundamental purpose of allowing parties to seek adjudication of an issue such that the potential liability associated with a course of action may be determined prior to the accrual of damages, courts have held that declaratory relief is intended to operate prospectively." (internal quotation marks omitted)); *Lojan v. Crumbsie*, No. 12 CV 0320 (LAP), 2013 WL 411356 (S.D.N.Y. Feb. 1, 2013) (same); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Grp., Inc.*, No. 02 Civ. 10338 (SAS), 2003 WL 21277114 (S.D.N.Y. June 2, 2003) (same).  A retrospective interim declaration addressing claimed past violations of a contractual provision does not contribute to legal clarity or finality and is beyond the scope of the prospective mechanism for relief the Declaratory Judgment Act establishes.

### C.  Declaratory Relief Is Neither Useful Nor Necessary

Given the history of this litigation, granting Ex-Im Bank an interim declaration would not resolve the legal conflict between Grenada and Ex-Im Bank.  The only possible purpose of Ex-Im Bank's motion for an interim declaration is as a building block to support a future claim for the permanent injunction Ex-Im Bank is, by its own statement, unready to request "at this time." Cross-Motion at 23.  But a finding that Grenada violated the *pari passu* or negative pledge clauses in the past is irrelevant to whether Ex-Im Bank is entitled to a permanent injunction going forward.  Rather, a plaintiff seeking a permanent injunction "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he will be injured in the future." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (citation and internal quotation marks omitted).  Nor is establishing a past violation part of the standard for determining whether a plaintiff is entitled to a permanent injunction.  A plaintiff seeking a permanent injunction must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

11

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160-61 (2d Cir. 2012).[4] Thus, any interim declaration that Grenada violated the *pari passu* clause of the Loan Agreements in the past would not entitle Ex-Im Bank to the permanent injunction it sought in its Complaint.[5]

Furthermore, "[w]hen declaratory relief will not be effective in settling the controversy, the court may decline to grant it." Fed. R. Civ. P. 57 advisory committee's note. An interim declaration would give Ex-Im Bank neither more nor fewer rights vis-à-vis Grenada; it would not alter the financial relationship between the parties nor would it allow Ex-Im Bank to obtain the permanent injunction it seeks in this second action against Grenada. Declaratory relief would contribute nothing to clarity or finality. Entertaining Ex-Im Bank's motion would devote judicial resources to an endeavor that cannot avail either party anything.

Finally, even if the Court were to find a past violation of the *pari passu* clause, there are grounds on which it could and should nonetheless deny the ultimate injunctive relief sought, thereby making it unnecessary to consider declaratory relief at this juncture. Those additional grounds include laches, public interest considerations involving third parties, and the inability of

---

[4] Even if Ex-Im Bank has suffered an injury, and even if the Court found that Ex-Im's injury had some bearing on one prong of the permanent injunction standard, the Court should deny Ex-Im Bank's motion for declaratory judgment, as "courts look with disfavor on piecemeal litigation of the matters in controversy and may refuse declaratory relief on those grounds." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2759 (3d ed. 2005).

[5] Just as granting Ex-Im Bank's motion for an interim declaration will not allow Ex-Im Bank to obtain the permanent injunction it seeks, declining to consider the motion will have no adverse effect on Ex-Im Bank. If its Complaint survives Grenada's 12(c) motion and is thereafter litigated on the merits, Ex-Im Bank can then present its arguments for injunctive relief and the evidence it will need to prove them.

the Court to fashion relief that it can enforce or that would not violate the sovereignty of a

foreign state.

If Ex-Im Bank's Action Two Complaint is not barred by the merger doctrine or otherwise

by res judicata, all of these issues will need to be litigated, as well as the underlying issue of

whether any future action by Grenada will violate the *pari passu* clause.  Ex-Im Bank's Cross-

Motion serves no purpose in connection with any of these issues and should be denied.

## II.     EX-IM BANK HAS NOT ESTABLISHED A PAST BREACH OF THE *PARI PASSU* CLAUSE

The *pari passu* clauses at issue in this litigation vary between the different Loan

Agreements executed between Ex-Im Bank and Grenada.  In the First and Fourth Loan

Agreements,[6] the *pari passu* clause reads:

> The Borrower's obligations under this Agreement constitute and will at all
> times constitute, and its obligations under the Note once duly executed and
> delivered by the Borrower will at all times constitute, unconditional general
> obligations of the Borrower for the performance of which the full faith and
> credit of Grenada is committed, and rank and will at all times rank in right of
> payment at least pari passu with all other External Indebtedness and similar
> external obligations of the Borrower (whether direct or contingent)
> outstanding from time to time.

First Loan Agreement (Ex. N) § 5.04; *see also* Fourth Loan Agreement (Ex. Q) §

5.01(d).  The Second and Third Loan Agreements contain *pari passu* clauses that

state:

> The Borrower's obligations under this Agreement and the Note will at all
> times rank at least <u>pari passu</u> with Borrower's any other External Indebtedness
> (direct or contingent) outstanding from time to time.

Second Loan Agreement (Ex. O) § 4.04; Third Loan Agreement (Ex. P) § 4.04.

---

[6] The language of the *pari passu* clause in the Fourth Loan Agreement is materially the same as
the *pari passu* clause in the First Loan Agreement.  *Compare* First Loan Agreement (Ex. N) §
5.04 *with* Fourth Loan Agreement (Ex. Q) § 5.01(d).

In support of its motion, Ex-Im Bank identifies two acts it asserts constitute a violation of the *pari passu* clause entitling it to a declaration of past breach. Ex-Im Bank argues that Grenada violated the *pari passu* clause in the Loan Agreements by making (1) "payments to sovereign or official creditors on Grenada's external debt"; and (2) "a payment for the benefit of the holders of its outstanding bonds." Cross-Motion at 24. Ex-Im Bank also briefly refers to the 2005 Offering Memorandum and implies that Ex-Im Bank's claims were among the "Eligible Claims" governed by the Offering Memorandum, Cross-Motion at 24, although in fact, as previously discussed, the Offering Memorandum's definition of "Eligible Claims" does not include the debt held by Ex-Im Bank.

As noted above in footnote 1, *supra*, Ex-Im Bank does not cite any legal authority for the premise that Grenada violated the negative pledge clause, and, as legal support for its argument that Grenada's payments to creditors violate the *pari passu* clause, Ex-Im Bank relies on a single citation to a single case, *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012). *NML*, however, which remains pending before the Second Circuit on the issue of remedy, *see NML Capital, Ltd. v. Republic of Argentina*, 12-105-cv(L) (2d Cir.), has been routinely criticized by most observers, including the U.S. Government, *see* Brief of the United States in Support of Panel Rehearing or Rehearing En Banc, *NML Capital, Ltd. v. Republic of Argentina*, 12-105(L)-cv (2d Cir. Dec. 28, 2012), and is asserted by its proponents to be limited to the supposedly unique situation of Argentina, *see* NML Br. at 37-38 n.6, *NML Capital, Ltd. v. Republic of Argentina*, 12-105-cv(L) (2d Cir. Jan. 25, 2013), is far different from the present case.

Contrary to Ex-Im Bank's apparent position, *NML* nowhere suggests that the fact that a debtor does not pay one creditor, while paying others, violates the *pari passu* clause. To the

contrary, *NML* held that a debtor violates the *pari passu* clause "by ranking its payment obligations on the defaulted debt below its obligations to the holders of its restructured debt." *NML*, 699 F.3d at 250.  This finding was based on a moratorium on payment of debt principal, annual legislation renewing that moratorium, statements in prospectuses that the debtor would not make payments on bonds eligible to participate in the restructuring that were not tendered or otherwise restructured, a law prohibiting the debtor from conducting a settlement with respect to the plaintiffs' debt, and statements in SEC filings that the debtor was not in a legal position to make payments on the bonds at issue in the case.  *Id.* at 251-54, 260.  The Second Circuit emphasized that the issue was whether the debtor "will repudiate th[e] debt in a manner that violates a pari passu clause," *id.* at 264, and observed that the debtor there "effectively has *ranked its payment obligations* to the plaintiffs below those of the exchange bondholders,"  *id*. at 259 (emphasis added), because of the collective effect of the foregoing actions.

Ex-Im Bank has not alleged that its debt was subordinated to debt held by other creditors, nor has Ex-Im Bank pled facts demonstrating conduct remotely similar to the conduct the Second Circuit found dispositive in *NML*.  Ex-Im Bank's Complaint is silent as to any facts that would constitute "subordination" or a change in "ranking."  The only time either of those words are referenced in the Complaint is in the quotation of the *pari passu* clause.  Compl. ¶¶ 10, 29.  Rather than argue that its debt was subordinated, which, per *NML*, is the test for finding a violation of a *pari passu* clause, Ex-Im Bank's Complaint alleges no more than that Grenada has violated or would violate the *pari passu* clause by making payments to other creditors without making ratable payments to Ex-Im Bank.[7]  The Offering Memorandum does not subordinate

---

[7] Compl. ¶ 16 ("the *pari passu* clauses preclude Grenada from *making a payment* to a holder of External Indebtedness without making a ratable payment at the same time to Ex-Im Bank."); *id*. ¶ 30 ("Grenada, therefore, *may not make any payment* of its External Indebtedness without also

non-restructured debt, and Grenada has denied all of Ex-Im Bank's other pertinent allegations. Answer ¶ 19. *See also* Grenada Motion at 7 n.3. And even if the Offering Memorandum did subordinate debt, it is inapplicable to Ex-Im Bank because Ex-Im Bank does not possess one of the Eligible Claims listed in the Schedules to the Offering Memorandum, *see supra*.

Tellingly, even the plaintiffs in *NML* did not argue the position advocated by Ex-Im Bank that the simple fact of payments to other creditors violates the *pari passu* clause. Before the Second Circuit, the plaintiffs in *NML* alleged that the debtor's "conduct violated the Pari Passu Clause by both subordinating their [the plaintiffs'] FAA Bonds to the Exchange Bonds and lowering the ranking of their FAA Bonds below the Exchange Bonds." *NML Capital Ltd.*, 699 F.3d at 251-52. NML argued that there was de facto subordination because the debtor "reduced the rank of plaintiffs' bonds to a permanent non-performing status by passing legislation barring payments on them while continuing to pay on the restructured debt and by repeatedly asserting that it has no intention of making payments on plaintiffs' bonds." *Id*. at 258. Neither the *NML* plaintiffs' argument nor the Second Circuit's holding provide any support for Ex-Im Bank's contentions—neither suggested that non-payment to plaintiffs and payment to other creditors suffice to constitute a violation of a *pari passu* clause.[8]

---

making a ratable payment at the same time to Ex-Im Bank."); *id*. ¶ 33 ("Grenada's *past payments* to holders of its other External Indebtedness, while paying nothing to Ex-Im Bank, violated the *pari passu* clauses and its negative covenant not to prefer other creditors over Ex-Im Bank with respect to the repayment of principal and interest."); *id*. ¶ 34 ("Grenada's *continuing payments to* holders of its other External Indebtedness, without making any payments to Ex-Im Bank, will be ongoing violations of the *pari passu* clauses and its negative covenant against granting preferences in payment to other creditors.") (emphasis added).

[8] Ex-Im Bank mistakenly conflates the *breach* of the clause and the *remedy* for the breach of the clause as discussed in *NML*. *See* Compl. ¶ 16 ("the *pari passu* clauses preclude Grenada from making a payment to a holder of External Indebtedness without making a ratable payment at the same time to Ex-Im Bank."). In *NML*, the Second Circuit addressed the district court's fashioning—as a *remedy* for Argentina's breach of the *pari passu* clause—an injunction that

Ex-Im Bank cites footnote 16 of the *NML* decision in asserting that the Second Circuit held that the debtor "violated the plaintiffs' rights under the *pari passu* clause through the same type of conduct that Grenada exhibited here."  Cross-Motion at 23.  In fact, far from holding that simple payment to other creditors violates a *pari passu* clause, the Second Circuit explicitly declined to affirm the district court's holding to that effect.  In footnote 16, the Second Circuit wrote that "to the extent the district court suggested that a breach would occur with *any* non-payment that is coupled with payment on other debt, . . . we need not decide whether it was correct . . . . We simply affirm the district court's conclusion that [the debtor's] course of conduct here did."  *NML*, 699 F.3d at 264 n.16.  Even an analysis confined to this footnote of the decision, which is all that Ex-Im Bank cites, does not support the premise that payment to other creditors without also paying the plaintiff would violate a *pari passu* clause.

The Second Circuit's emphasis on legal ranking and subordination, rather than payment, tracks the general understanding of *pari passu* clauses.  Lee C. Buchheit & Ralph Resiner, *The Effect of the Sovereign Debt Restructuring Process on Inter-Creditor Relationships*, 1988 Univ. Ill. L. Rev. 493, 497 (1988) ("[T]he borrower violates [the *pari passu* clause] only by attempting to create a class of senior indebtedness in preference to that outstanding under the loan agreement in which the clause appears."); Philip R. Wood, *Pari Passu Clauses – What Do They Mean?*, Butterworths J. of Int'l Banking and Fin. L. 371, 373 (2003) ("[T]he [*pari passu*] clause must mean that, for example, there is no statutory or constitutional or other rule of law . . . subordinating the debt to other debt.").  According to other commentators,

---

every time it makes a payment to its exchange bondholders it must make ratable payment to plaintiffs.  *NML Capital, Ltd.*, 699 F.3d at 259 n.10.  The court did not hold that every payment to exchange bondholders was a new violation of the clause (or that payment to exchange bondholders without payment to plaintiffs was a violation of the clause at all, *see infra*).

> [T]he pari passu representation and covenant have traditionally been intended only to address whether one creditor has a legal right to be paid before another creditor; neither clause is intended to prevent a borrower from being friendlier to one claimant over another, or from managing its balance sheet intelligently by paying higher-cost debt or earlier-maturing debt before lower-cost, later-maturing claims, or even from curing defaults by refinancing a creditor at the brink of acceleration while leaving other debt outstanding.

Richard Wight with Warren Cooke & Richard Gray, *The LSTA's Complete Credit Agreement Guide* 268 (2009).  Ex-Im Bank does not cite any authority for the proposition that the conduct it alleges constitutes a violation of the *pari passu* clause—nor could it.  With the exception of the district court whose holding the Second Circuit declined to endorse, no court applying New York law has ever held that paying one creditor while not paying another violated a *pari passu* clause.  Because that is all that Ex-Im Bank alleges, its Cross-Motion should be denied.

18

## CONCLUSION

For the foregoing reasons, Ex-Im Bank's cross-motion for judgment on the pleadings

should be denied.

Dated:  New York, New York
        June 10, 2013

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:   ____/s/ Boaz S. Morag_____
        Boaz S. Morag (bmorag@cgsh.com)

*Of Counsel:*
Kristin A. Bresnahan

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Grenada