UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE EXPORT-IMPORT BANK OF THE REPUBLIC OF CHINA,<br><br>    Plaintiff/Judgment Creditor,<br><br>    v.<br><br>GRENADA,<br><br>    Defendant/Judgment Debtor. | 13 Civ. 1450 (HB) |

# MEMORANDUM OF LAW
## OF PROPOSED INTERVENORS IN OPPOSITION TO
## EX-IM BANK'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

**BINGHAM McCUTCHEN LLP**

Sabin Willett
(sabin.willett@bingham.com)
Julia Frost-Davies
(julia.frost-davies@bingham.com)
Samuel R. Rowley
(samuel.rowley@bingham.com)
One Federal Street
Boston, MA  02110-1726
Tel.: (617) 951-8000
Fax: (617) 951-8736

Timothy B. DeSieno
(tim.desieno@bingham.com)
Katherine Dobson
(katherine.dobson@bingham.com)
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000
Fax: (212) 752-5378

*Attorneys for Intervenor-Defendants*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT ALLEGATIONS OF THE PLEADINGS............................................................... 2

I.  Ex-Im Bank's Suit to Bar Payment on the Exchange Bonds............................................ 2

II. Ex-Im Bank's Cross-Motion for Judgment on the Pleadings ........................................... 3

ARGUMENT .................................................................................................................................. 4

I.  The Record Does Not Support Relief Under Rule 12(c) .................................................. 4

  A.  Relief is Not Available Where, As Here, Core Issues Are Contested in the Pleadings. .................................................................................................... 4

  B.  This Case Is Unsuitable for "Partial" Judgment on the Pleadings. ........................ 6

II. *NML Capital* Does Not Support Relief in This Case......................................................... 9

  A.  In *NML Capital*, *Pari Passu* "Breach" Was Based On A Developed Factual Record of An Extensive "Course of Conduct" by Argentina. .................. 9

  B.  The Pleadings Here Present Different Contract Language, And No Record of the "Course of Conduct" On Which *NML Capital* Turned. ............................ 11

CONCLUSION............................................................................................................................. 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Altman v. New York City Dept. of Educ.*,
    2007 WL 869021 (S.D.N.Y. Mar. 23, 2007) (Baer, J.) ..........................................................6, 7

*Authors Guild, Inc. v. HathiTrust*,
    902 F. Supp. 2d 445 (S.D.N.Y. 2012) (Baer, J.) .......................................................................4

*Bond v. Sterling, Inc.*,
    997 F. Supp. 306 (S.D.N.Y. 1998) ............................................................................................5

*Chi-Mil Corp. v. W.T. Grant Co.*,
    70 F.R.D. 352 (E.D. Wis. 1976) ...............................................................................................6

*DeSantis v. U.S.*,
    783 F. Supp. 165 (S.D.N.Y. 1992) ............................................................................................4

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ..................................................................................................................7

*La Mirada Prods. Co., Inc. v. Wassall PLC*,
    823 F. Supp. 138 (S.D.N.Y. 1993) ............................................................................................7

*NML Capital Ltd. v. Republic of Argentina*,
    699 F.3d 246 (2d Cir. 2012) ............................................................................................ passim

*Shah v. New York State Dep't. of Civil Serv.*,
    1996 WL 694340 (S.D.N.Y. Dec. 4, 1996) ......................................................................4, 5, 6

*VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*,
    29 F. Supp. 2d 1253 (D. Kan. 1998) .........................................................................................6

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*,
    694 F.3d 155 (2d Cir. 2012) ......................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(c) ................................................................................................. *passim*

Fed. R. Civ. P. 56(a) ................................................................................................................6

GMO Trust, on behalf of its series GMO Emerging Country Debt Fund, GMO Emerging Country Debt L.P., GMO Emerging Country Debt Investment Fund plc, Greylock Global Opportunity Master Fund Ltd., and Franklin Templeton Emerging Market Debt Opportunities Fund plc ("Intervenors"), holders of beneficial interests in bonds that were originally issued by Grenada in a 2005 debt exchange (the "Exchange Bonds"), submit this memorandum of law in opposition to the Export-Import Bank of China's ("Ex-Im Bank's") Cross-Motion for Judgment on the Pleadings [Docket No. 17].[1]

## PRELIMINARY STATEMENT

Relying on the Second Circuit's decision in *NML Capital Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012), Ex-Im Bank seeks "partial" judgment on the pleadings. It has cross-moved under Federal Rule of Civil Procedure 12(c), requesting "an order establishing Grenada's liability for violations of the *pari passu* clauses and restrictive covenants of the Loan Agreements." Memorandum of Law in Support of Ex-Im Bank's Cross-Motion for Judgment on the Pleadings at 25 ("Cross-Motion Mem.") [Docket No. 18]. Neither the pleadings nor *NML Capital* supports the request. The pleadings consist of a complaint [Docket No. 1] and an answer [Docket No. 12]. The latter's denial of key allegations alone warrants denial of relief under Rule 12(c). In part this is because the core premise of Ex-Im Bank's motion -- that it can justify an equitable remedy on the basis of mere nonpayment of its debt while Grenada has paid on certain other obligations -- is wrong. In *NML Capital*, the court of appeals explicitly did not rule that "any non-payment that is coupled with payment on other debt" breached the *pari passu* clause. 699 F.3d at 264 n.16. Rather, Argentina's entire and extraordinary "course of conduct" breached the clause. *Id.* Thus the Second Circuit ruled in the context of official executive and legislative

---

[1] Intervenors' motion for leave to intervene [Docket No. 19] is pending.

action to re-rank the debt.  There are no admitted allegations in the pleadings here that would permit this Court to reach the conclusion that Grenada has engaged in such conduct.

Partial judgments on the pleadings are designed to promote judicial efficiency in actions where, for example, a court can cleanly separate counts of a complaint, or clearly pleaded, separate liability and damages phases.  Partial judgment is particularly inappropriate here, where Ex-Im Bank seeks only one remedy in its complaint:  the equitable remedy of specific performance, which requires an intensely factual, multi-pronged analysis involving consideration of the "course of conduct" so critical to the Second Circuit's analysis in *NML Capital*, *see infra* 9-11), as well as the burden on third parties such as Intervenors, the public interest, and other factors.

Because no such showing has been made in this case on the face of the pleadings, the Court should deny the cross-motion, and permit development of the necessary factual record.

## RELEVANT ALLEGATIONS OF THE PLEADINGS

### I.  Ex-Im Bank's Suit to Bar Payment on the Exchange Bonds.

Ex-Im Bank seeks an order for "specific performance" of certain covenants in the Loan Agreements that address relations between Grenada's creditors.  Ex-Im Bank relies primarily on "*pari passu*" clauses (collectively, the "*Pari Passu* Clauses") in the Loan Agreements.  Two of those clauses provide:

> [Grenada's] obligations under this Agreement and the Note will at all times rank at least pari passu with [Grenada's] any other *[sic]* External Indebtedness (direct or contingent) outstanding from time to time.[2]

---

[2] *See* Declaration of Paul E. Summit in Support of Motion by the Export-Import Bank of the Republic of China for an Order to Show Cause Why a Preliminary Injunction Should Not Issue, With a Temporary Restraining Order ("Summit Decl."), Ex. B at 9; Ex. C at 10 (emphasis in original) [Docket No. 4].

The other two clauses provide:

> [Grenada's] obligations under this Agreement constitute and will at all times constitute, and its obligations under the Note once duly executed and delivered by [Grenada] will at all times constitute, unconditional general obligations of [Grenada] for the performance of which the full faith and credit of Grenada is committed, and rank and will at all times rank in right of payment *and collateral security and otherwise* at least pari passu with all other External Indebtedness and similar external obligations of the Borrower (whether direct or contingent) outstanding from time to time.[3]

Ex-Im Bank asserts that the *Pari Passu* Clauses "preclude Grenada from making a payment to a holder of External Indebtedness without making a ratable payment at the same time to Ex-Im Bank." Compl. ¶ 16. It further alleges that Grenada breached the *Pari Passu* Clauses by making payments on its External Indebtedness without making payments to Ex-Im Bank. *Id*. ¶¶ 33, 34. Ex-Im Bank also relies on a negative covenant that prohibits Grenada from permitting another of its debts "to have any priority or be subject to any preferential arrangement, whether or not constituting a security agreement, in favor of any creditor or class of creditors, as to security, the repayment of principal and interest or the right to receive income or revenue." *Id*. ¶ 13. It seeks a judgment that would amount to a permanent injunction, "specifically enforcing the *pari passu* clauses and the negative covenant against granting preferential payment arrangements to other creditors," thereby enjoining Grenada from making payments on its other External Indebtedness (including bonds owned by Intervenors) unless Grenada also pays Ex-Im Bank. *Id*. ¶¶ 35-39; Prayer For Relief (1).

## II.  **Ex-Im Bank's Cross-Motion for Judgment on the Pleadings.**

In support of its cross-motion for judgment on the pleadings under Rule 12(c), Ex-Im Bank contends that the Second Circuit in *NML Capital* construed a "materially identical" *pari*

---

[3] Summit Decl.; Ex. D at 12, Ex. E. at 10. (The italicized text does not appear in the clause contained in the Loan Agreement at Exhibit D.)

*passu* clause and that Grenada has exhibited similar misconduct on which the court affirmed *pari passu* violations by Argentina. Cross-Motion Mem. at 23. It asserts that "Grenada has admitted all of the facts necessary for the Court to find [*i.e.,* under *NML Capital*] that it has violated the *pari passu* clauses and restrictive covenants in the Loan Agreements." *Id*. at 24.

## ARGUMENT

### I. The Record Does Not Support Relief Under Rule 12(c).

#### A. Relief is Not Available Where, As Here, Core Issues Are Contested in the Pleadings.

As a threshold matter, Ex-Im Bank's *pari passu* rights have not merged into the default judgment it obtained,[4] and certainly it can raise and be heard on the *Pari Passu* Clauses in this litigation. But that does not entitle it to judgment on the pleadings.

Courts "follow a fairly restrictive standard in ruling on a motion for judgment on the pleadings." *Shah v. New York State Dep't. of Civil Serv*., 1996 WL 694340, at *2 (S.D.N.Y. Dec. 4, 1996). "The plaintiff is only entitled to judgment on the pleadings 'where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'" *Id.* (quoting *DeSantis v. U.S.*, 783 F. Supp. 165, 168 (S.D.N.Y. 1992)); *see also Authors Guild, Inc. v. HathiTrust*, 902 F. Supp. 2d 445, 456 (S.D.N.Y. 2012) (Baer, J.) ("A party is entitled to judgment on the pleadings only if it is clear that no material issues of fact remain to be resolved and that it is entitled to judgment as a matter of law.") (citation and internal quotation marks omitted). To prevail at this early stage of the litigation, Ex-Im Bank must show that its complaint (and documents attached or incorporated by

---

[4] *See generally* Memorandum of Law of the Export-Import Bank of the Republic of China in Opposition to Grenada's Motion for Judgment on the Pleadings Dismissing Plaintiff's Complaint [Docket No. 18]; Memorandum of Law of Proposed Intervenors in Opposition to Grenada's Motion for Judgment on the Pleadings [Docket No. 29].

- 5 -

reference), read together with Grenada's answer, and drawing all reasonable inferences in Grenada's favor, establishes that Ex-Im Bank is entitled to judgment as a matter of law. *Bond v. Sterling, Inc.*, 997 F. Supp. 306, 311 (S.D.N.Y. 1998); *Shah*, 1996 WL 694340, at *2. Ex-Im Bank has not made its case.

*NML Capital* upheld an injunction because it "affirm[ed] the district court's conclusion that Argentina's course of conduct" resulted in a breach of the *pari passu* clause. *Id*. at 264 n.16.[5]  As explained in greater detail below, *see infra* 9-11, the Second Circuit held that Argentina's "executive declarations and legislative enactments" violated the *pari passu* clause Argentina included in its bonds. 699 F.3d at 260. The pleadings here do not allege -- let alone establish -- any similar course of conduct. The record consists of a complaint (with documents it references) and an answer, and Grenada has not admitted the facts necessary to show the necessary course of conduct. The complaint consists mostly of allegations that Grenada either accurately points out are mere legal **assertions**, or denies outright. *Compare* Compl. ¶¶ 16, 30, 33, 35, *with* Answer ¶¶ 16, 30, 33, 35. The complaint admits no course of conduct aimed at re-ranking Ex-Im Bank, and does not allege a single legislative action. Grenada's sole "pronouncement" in the offering memorandum did not even apply to Ex-Im Bank's debt. *See infra* 13.  At most, the uncontested allegations show that Grenada has made payments to two creditors; this is not even arguably sufficient to entitle Ex-Im Bank to judgment as a matter of law.  Standing alone, Grenada's denials, and the absence of an admitted course of conduct bar judgment on the pleadings because the pleadings present issues of material fact. *See, e.g.*, *Bond*, 997 F. Supp. at 311-12 ("[T]he Court will construe defendants' answer as having denied the allegations in Count One of the Complaint.  Such denials raise material fact issues . . . .

---

[5] *See* discussion, *infra* 9-11.

Accordingly, plaintiff's motion for judgment on the pleadings as to Count One is denied."); *Shah*, 1996 WL 694340, at *2 ("In their answer, the defendants denied all of the plaintiff's material allegations.  The conflict between the defendants' denial of the allegations and the plaintiff's assertions in itself creates issues of fact which may not be resolved on a motion for judgment on the pleadings.").  When a defendant joins issue with the plaintiff in the pleadings, the case cannot be resolved on Rule 12(c).  Read with all reasonable inferences in Grenada's favor, the pleadings here show a dispute that forecloses relief under Rule 12(c).

### B. This Case Is Unsuitable for "Partial" Judgment on the Pleadings.

While partial summary judgment is specifically contemplated by the federal rules, the rules do not provide for "partial" judgment on the pleadings.  *Compare* Fed. R. Civ. P. 56(a) ("Motion for Summary Judgment or Partial Summary Judgment") *with* Fed. R. Civ. P. 12(c) ("a party may move for judgment on the pleadings").  To be sure, cases have recognized partial judgments under Rule 12(c), but only where a discrete aspect of the case, easily separable, was at issue: for example, a separate count of a complaint, *VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*, 29 F. Supp. 2d 1253, 1258 (D. Kan. 1998) (dismissing some but not all counts of the complaint on the pleadings), or the damages phase of a case in which liability was established on the pleadings, *Chi-Mil Corp. v. W.T. Grant Co.*, 70 F.R.D. 352, 357-58 (E.D. Wis. 1976) (granting partial judgment on liability of payment obligations under a lease; allowing damages phase to proceed).  *Altman v. New York City Dept. of Educ.*, 2007 WL 869021 (S.D.N.Y. Mar. 23, 2007) (Baer, J.), presented a straightforward pleading problem, easily remedied by discrete and partial relief.  Plaintiff brought an age and gender discrimination case under Title VII and the ADEA against certain individuals.  In light of the settled law that individuals cannot be liable, the Court allowed a motion for partial judgment on the pleadings, making clear that the case

could proceed, as is customary in such cases, against the individuals in their official capacities, but eliminating them from the suit in a personal capacity. 2007 WL 869021, at *1-2.[6] In these cases, partial judgments were appropriate to further the policy goal of efficient resolution of actions where there are no disputed material facts.

This case does not fit the limited model for partial relief under Rule 12(c), because there is significant overlap between the breach analysis and the propriety of equitable relief. Ex-Im Bank brings only one claim -- for injunctive relief by way of "specific performance" of the *Pari Passu* clauses. Compl. at 5. To establish breach, it will have to show a "course of conduct" sufficient to demonstrate that Grenada subordinated its loans. *See NML Capital*, 699 F.3d at 260, 264 n.16. To show that it is entitled to an injunction, Ex-Im Bank will have to establish a factual record sufficient to prove "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155 (2d Cir. 2012) (affirming denial of permanent injunction) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). And to obtain specific performance as the form of injunction, Ex-Im Bank would have to show "(1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; *(3) defendant is able to perform its obligations*; and (4) plaintiff has no adequate remedy at law." *La Mirada Prods. Co., Inc. v. Wassall PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1993) (emphasis added).

---

[6] While the motion evidently was brought under Rule 12(c), the Court framed its actual relief as dismissal of the claims against the individuals in their individual capacity. *Id*. at *2.

- 8 -

The remedy sought requires consideration of a collection of contract-related and equitable factors, none of which is separable, and all of which are contested.  A final judgment in the case will necessarily consider not simply whether there was a technical breach, but the materiality of the breach, how the equities balance (in light of the degree of that breach) with the impact on third parties, whether there truly is no adequate remedy at law, whether relief is in the public interest, and other factors.  Because specific performance is requested, the Court will even have to consider the extent to which Grenada can actually perform its contractual obligations.

As *NML Capital* demonstrated, many of the disputed facts underlying a "course of conduct" are essential to determining whether the balance of the equities supports injunctive relief.  The Second Circuit found that Argentina breached the *pari passu* clause through a "combination of . . . executive declarations and legislative enactments."  669 F.3d at 260, 264 n.16.  Those same actions demonstrated that "the balance of the equities and the public interest" supported the injunction because "Argentina's disregard of its legal obligations exceeds any affront to its sovereign powers resulting from the Injunctions."  *Id*. at 263.  With the issues of breach and remedy inextricably intertwined, the Court should not grant "partial" judgment under Rule 12(c).

The Court will also have to consider the impact an order of specific performance would have on third parties like Intervenors.  The Second Circuit noted the significance of the district court's conclusion that "Argentina has the financial wherewithal to meet its commitment of providing equal treatment" among the plaintiffs and the exchange bondholders.  *NML Capital*, 699 F.3d at 263.  That injunctive relief would not "jeopardize" the rights of exchange bondholders was important to the district court's decision.  *Id*. at 256.  "Argentina makes no real argument," the Second Circuit emphasized, in affirming, "that, to avoid defaulting on its other

debt, it cannot afford to service the defaulted debt." *Id*. The remedy sought here would constrain the sovereign's right to perform contracts with third parties, including Intervenors, without any showing that it is in fact able to meet its other obligations. Nothing in the record here suggests that, if the Court were to grant the equitable relief Ex-Im Bank seeks, Grenada has the financial ability *not* to jeopardize the rights of Intervenors. At minimum, the issue of impact on third parties requires factual development to aid the Court in resolving the core question in this case: whether to grant an equitable remedy that will impair third parties.

The practical solution here is to deny each of the pending cross-motions under Rule 12(c), and allow the parties and Intervenors to develop efficiently a full factual record on which the Court may later consider (possibly on cross-motions for summary judgment, if material facts prove not to be disputed), whether any relief is warranted.

## II.     *NML Capital* Does Not Support Relief In This Case.

### A.     In *NML Capital*, *Pari Passu* "Breach" Was Based On A Developed Factual Record of An Extensive "Course of Conduct" by Argentina.

The complaint cites *NML Capital* as its sole support for its theory that Grenada breached its obligations under these clauses. As explained below, *NML Capital* based its decision on the precise wording of contract clauses that Grenada did not employ, and on Argentina's *sui generis* "course of conduct," in which Grenada has not engaged.

In *NML Capital*, the Second Circuit construed a *pari passu* clause contained in a Fiscal Agency Agreement ("FAA"), pursuant to which Argentina issued bonds beginning in 1994. 699 F.3d at 251. Following a default in 2001 on the FAA bonds, Argentina offered holders new exchange bonds in 2005 and 2010 (the "Argentine Exchange Bonds"). *Id*. Holders of the defaulted FAA bonds sued for injunctive relief to remedy Argentina's ranking of their payment obligations below obligations owed on subsequently issued debt. They alleged "that Argentina's

conduct violated the *pari passu* clause by both subordinating their FAA Bonds to the Exchange Bonds and lowering the ranking of their FAA Bonds below the Exchange Bonds." *Id*. at 251-52. The district court granted injunctive relief on a motion for summary judgment, relying on the specific text of the clause and on an extensive factual record.  The Second Circuit affirmed the district court's interpretation of the *pari passu* clause by focusing on (1) the particular structure of that provision, and (2) Argentina's uniquely contumacious course of conduct, leading to a ranking of the plaintiffs' payment obligations below the payment obligations on subsequently issued debt.

      The Second Circuit began by engaging in a close textual reading of the provision at issue. This close reading was necessary because, in the sovereign debt context so-called *pari passu* clauses lack a uniform construction grounded in industry usage.  *Id*. at 258.  In the absence of a well-settled meaning, the court turned to ordinary contract construction principles.  *Id*.  The *NML Capital* clause contained two sentences:

> [t]he Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* without any preference among themselves. *The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness*[.]

*Id*. (quoting the FAA, paragraph 1(c)) (emphasis in original).  To adhere to the principle that separate contract provisions should be given independent meaning, the court studied the text of the clause carefully, and it emphasized the differences between the first and second sentences of the clause.  *Id*. at 258-59.  Driving the court's analysis was Argentine executive and legislative actions that effectively subordinated the plaintiffs' debt.  The "combination of Argentina's executive declarations and legislative enactments have ensured" subordination of plaintiffs' debt in violation of the clause.  *Id*. at 260.  The same evidence "amply supports a finding that

- 10 -

Argentina effectively has ranked its payment obligations to the plaintiffs below those of the exchange bondholders" in violation of sentence two (the so-called Equal Treatment Provision). *Id.* at 259.

The record showed a decade of relentlessly provocative actions by the Argentine state to ensure that plaintiffs' debt would be subordinated. Argentina repeatedly enacted legislative moratoriums on payment, 699 F.3d at 251, flouted court orders, *id*. at 255-56, and declared in filings to the Securities and Exchange Commission that the FAA Bonds had been placed in "a separate category from its regular debt," *id*. at 260. Argentina also enacted the so-called "Lock Law," which "preclud[es] [Argentine] officials from paying defaulted bondholders," prohibits any form of settlement, and bars Argentine courts "from recognizing plaintiffs' [default] judgments." *Id*. at 251, 260. This course of conduct -- combined with Argentina's uncontested ability to honor its obligations to all creditors -- also supported the district court's injunctive relief, tipping the equities decidedly against Argentina. *Id*. at 263.

The court of appeals explicitly did not rule that "any non-payment that is coupled with payment on other debt" breached the *pari passu* clause. *Id.* at 264 n.16. Rather, Argentina's entire and extraordinary "course of conduct" breached the clause. *Id.* The court of appeals thus did not rest its affirmance merely on what the complaint alleges here: payment to one creditor and nonpayment to another. *See id*. It expressly affirmed the district court's conclusion of breach only on the basis of the "combination of Argentina's executive declarations and legislative enactments." *Id*. That evidence of conduct is what left the Second Circuit with "little difficulty concluding that Argentina breached the *Pari Passu* Clause of the FAA." *Id*. at 260.

> **B.     The Pleadings Here Present Different Contract Language, And No Record of the "Course of Conduct" On Which *NML Capital* Turned.**

The *pari passu* clause in *NML Capital* is not "materially identical," *see* Cross-Motion

A/75605115.1

Mem. at 23, to the *pari passu* clauses in Ex-Im Bank's loans. *NML Capital* teaches that because *pari passu* clauses lack customary usage in the sovereign debt context, courts are to construe them by their plain text, case-by-case. 699 F.3d at 258. The *Pari Passu* Clauses here are materially different from the provision at issue in *NML Capital*. Both iterations of the clause consist of a single sentence, not the two sentences in *NML Capital*. The single sentence of the first of the two iterations quoted *supra* at 2-3 omits the word "payment," and the second clause provides that obligations will "rank in right of payment." Reference to "payment obligations" (a phrase that appeared in *NML Capital*, but which does not appear in any of Ex-Im Bank's clauses) coupled with the need to give distinct meanings to the two sentences of the *pari passu* clause (an element missing from each of Ex-Im Bank's clauses), led the Second Circuit to construe the different wording of *NML Capital* as involving the prioritization of actual payments to creditors. Nothing in the pleadings establishes that Ex-Im Bank's judgment no longer "rank[s] at least *pari passu*" with the Exchange Bonds, nor will record evidence once developed.

Even if Ex-Im Bank's pari passu clause were "materially identical" to the clauses in *NML Capital*, the pleadings do not establish that Grenada breached the clause through any "combination of . . . executive declarations and legislative enactments" akin to Argentina's conduct in *NML Capital*. *See* 699 F.3d at 260. Nowhere do the pleadings disclose any action taken by the Grenadian executive or legislative branch in connection with any debt obligation, let alone of the type carried out by Argentina. Ex-Im Bank does not allege any Grenadian statute, official decree, contract, public statement, or financial account, purporting to legally subordinate its judgment to the Exchange Bonds. It alleges that payments have been made on the Exchange Bonds without comparable payments made to Ex-Im Bank. But *NML Capital* made clear that Argentina breached the *pari passu* clause through its "course of conduct," not merely by paying

other debt without making payments on the FAA Bonds. *Id*. at 264 n.16.[7]

Ex-Im Bank's only allegation beyond mere non-payment of its debts is a statement made in an offering memorandum that Grenada intended not to pay "non-tendered Eligible Claims [that is, debt that elected not to restructure] *unless resources become available to do so*." Cross Motion Mem. at 23-24 (alterations in original) (emphasis added). Even if this single statement were sufficient to establish a "course of conduct" -- it is not -- Ex-Im Bank nowhere alleges that the debt it holds ever constituted "Eligible Claims," such that this statement indicated how Grenada intended to treat its obligations under Ex-Im Bank's loans. Ex-Im Bank's loans were not in fact "Eligible Claims:" schedules to the offering memorandum identified the Eligible Claims, and they show plainly that Ex-Im Bank's debt was not among them.[8] Ex-Im Bank has therefore alleged not a single statement that suggests that Grenada would not pay Ex-Im Bank's debt. The statement in the offering memorandum did not display a "disregard of its legal obligations," *NML Capital*, 699 F.3d at 263, but rather was an observation that Grenada had insufficient resources, at the time, to pay non-tendered Eligible Claims, and would pay them if resources became available.[9]

In *NML Capital*, the evidence of long-term nonpayment and statements made by Argentina in prospectuses was secondary to evidence of legislative and executive subordination

---

[7] Because negative covenants are not at issue in *NML Capital*, the decision is not authority for the question whether Ex-Im Bank is entitled to judgment as a matter of law on the pleadings for any alleged breach of the negative covenant in its contracts. The only record evidence shows disputes of material facts. *See* Compl. ¶¶ 14, 31-34; Answer ¶¶ 14, 31-34.

[8] Morag Decl., Ex. D (Schedules A-1, B-1) [Docket No. 14-3].

[9] Grenada's inability to pay both Ex-Im Bank and its other creditors is a reason why the balance of the equities does not support Ex-Im Bank's requested injunction. *Cf. NML Capital*, 699 F.3d at 263 (finding that the equities supported equitable relief because Argentina "had sufficient funds, including over $40 billion in foreign currency reserves, to pay plaintiffs the judgments they are due.").

- 14 -

of the debt, and of contumacy by the Argentine state. Because the record in *NML Capital* was *sui generis*, the case would not support judgment on the pleadings here, even if the Court construed each of the *Pari Passu* Clauses as functionally equivalent to the Equal Treatment Provision in *NML Capital*, because the pleadings establish no undisputed "course of conduct."

## CONCLUSION

Ex-Im Bank's cross-motion for judgment on the pleadings should be denied.

Dated: New York, New York  
       June 10, 2013

**BINGHAM McCUTCHEN LLP**

By: /s/ Timothy B. DeSieno  
    Timothy B. DeSieno  
    tim.desieno@bingham.com  
    Katherine Dobson*  
    katherine.dobson@bingham.com  
    399 Park Avenue  
    New York, New York 10022-4689  
    (212) 705-7000  
    (212) 752-5378  

    Sabin Willett*  
    Julia Frost-Davies*  
    Samuel R. Rowley*  
    One Federal Street  
    Boston, MA 02110-1726

*Attorneys for Intervenor-Defendants*

\* Admitted *pro hac vice*.