UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THE EXPORT-IMPORT BANK OF THE REPUBLIC       :
OF CHINA,                                    :
                                             :
                            Plaintiff,       :        13 Civ. 1450 (HB)
                                             :
            -against-                        :
                                             :        **OPINION & ORDER**
                                             :
GRENADA,                                     :
                                             :
                            Defendant.       :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

  Defendant Grenada ("Grenada") and Plaintiff The Export-Import Bank of the Republic of China ("Ex-Im Bank") both move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Grantham, Mayo, Van Otterloo ("GMO") Trust, on behalf of its series GMO Emerging Country Debt Fund, GMO Emerging Country Debt L.P., GMO Emerging Country Debt Investment Fund plc, and Greylock Global Opportunity Master Fund Ltd., and Franklin Templeton Emerging Market Debt Opportunities Fund plc (together "Proposed Intervenors") move to intervene as parties pursuant to Fed. R. Civ. P. 24. For the reasons stated below, Proposed Intervenors' motion is GRANTED, and both Grenada and Ex-Im Bank's motions for judgment on the pleadings are DENIED. It is time for the litigation to move past the pleading stage so that a factual record may be developed, and discovery will hopefully do that.

## Background

  This is Ex-Im Bank's second action based on four loan agreements between Grenada and Ex-Im Bank executed in 1990 and 1997 and originally totaling $28 million. Based on the same four loan agreements, Ex-Im Bank's original action against Grenada was for the latter's default in 2006 and resulted in an amended judgment on March 16, 2007, in the amount of approximately $21.6 million, plus prejudgment interest, attorneys' fees, and statutory interest. *See Exp.-Imp. Bank of Republic of China v. Grenada*, 876 F. Supp. 2d 263, 264 (S.D.N.Y. 2012). The Complaint in the first action ("FA Compl.") also described, but did not seek to enforce, Grenada's promise under the loan agreements to rank "its obligations to the Ex-Im Bank . . . at least *pari passu* with its other External Indebtedness," defined as "debt denominated in a

currency other than Grenada's and payable to a nonresident of Granada." FA Compl. ¶ 24. The term *pari passu* is defined as "proportionally; at an equal pace; without preference." Black's Law Dictionary (9th ed. 2009).

Now, some six years later, Ex-Im Bank brings this second action, alleging the breach of the *pari passu* clause and negative covenant in the same four loan agreements and seeking injunctive relief. Specifically, the Complaint in the second action ("SA Compl.") alleges that Grenada has not satisfied any part of the judgment owed to Ex-Im Bank in the first action but has made "substantial interest payments on its external debt" in the period between 2008 and 2012, following Grenada's debt restructuring in 2005 and 2006. SA Compl. ¶¶ 9, 22. The Complaint also alleges that Grenada's Offering Memorandum in 2005 that sought to restructure its commercial debt stated that Grenada did not intend to pay any debt that was not restructured "unless resources became available to do so" and "if, at the time such payment is due, a payment default then existed under any new bond issued in the exchange." *Id*. ¶ 19. Ex-Im Bank did not participate in the 2005 restructuring. *Id*. ¶ 20.

Although Ex-Im Bank initially sought a temporary restraining order against Grenada when it filed the second action, Grenada stated at the hearing on March 13, 2013, that it was not in a position to make any payments to its other external creditors in the near future. The Court entered an order on consent to that effect; the order provided that Grenada would give Ex-Im Bank ten days' notice if Grenada were to make any such payments or alter any of its existing payment mechanisms. ECF No. 2. Proposed Intervenors hold beneficial interests in bonds that were issued by Grenada in the 2005 debt restructuring, and they seek intervention contending that Ex-Im Bank seeks a judgment that would effectively bar Grenada's payment to them.

## Discussion

### A.  Judgment on the Pleadings

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 520 (2d Cir. 2006) (citation omitted). The Court therefore accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the non-movant, *Hayden v. Paterson*, 594 F.3d 150, 157 n.4 (2d Cir. 2010) (internal quotation marks omitted), and in doing so, may consider the complaint, the answer, any attached written documents to the pleadings, and any matter with respect to which judicial notice is

appropriate, as well as any written instrument incorporated in the complaint by reference, *L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citations omitted). "The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.). "[D]ismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman*, 94 F.3d 823, 827 (2d Cir. 1996) (citation and internal quotation marks omitted).

   1. **Grenada's Motion**

Grenada moves to dismiss the second action on the ground of res judicata, as well as the doctrine of merger. Under both New York and federal law, the doctrine of res judicata, or claim preclusion, simply "provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (citation, original alterations and internal quotation marks omitted). In deciding whether res judicata applies, the court must first determine whether the second suit involves "the same claim or—nucleus of operative fact—as the first suit" by an analysis of the following concepts: "(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations." *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir. 2008) (internal quotation marks and citations omitted). The doctrine of merger, again in its simplest form, comes into play where a plaintiff's original claim is substituted for a valid and final judgment. It is a theory "closely related" to that of res judicata in that both doctrines are "based primarily on the policy of preventing multiple lawsuits based on the same cause of action." *Orix Credit Alliance, Inc. v. Horten*, 965 F. Supp. 481, 485 (S.D.N.Y. 1997).

Here, judgment on the pleadings must be denied because the record before the Court does not reflect that "the facts essential to the second [action] were [already] present in the first." *Channer*, 527 F.3d at 280 (quoting *Computer Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997)) (first alteration added). In the first action, where Ex-Im Bank sought to recover the outstanding amount under the four loan agreements, the essential facts were those that relate to Grenada's default, i.e. its failure to make principal and interest payments since April 2004 and

3

Ex-Im Bank's notice of default in June 2005. *See* FA Compl. ¶¶ 5, 32, 41, 49, 56.  The key facts and the foundation for the second action are based on the *pari passu* clause and Grenada's alleged payments to other external debtors in the period between 2008 and 2011, while Grenada paid nothing to Ex-Im Bank. *See* SA Compl. ¶¶ 9, 22.  It is difficult to characterize the latter set of wrongs, which takes place years after Grenada's default, as "related in time, space or origin to the wrongs litigated" in the first action. *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997).

      Yet Grenada argues that the present claim could have been brought in the first action because: (1) the Complaint in the first action mentions the *pari passu* clause; and (2) Grenada's Offering Memorandum for the 2005 Debt Structuring was publicly available at the time of the first action. Def.'s Supp. 14.  The facts suggest otherwise.  First, it is undisputed that the Complaint in the first action brought no claim under the *pari passu* clause nor did it contain any facts about Grenada's payment to its other external creditors.  Secondly, the Offering Memorandum dated September 9, 2005—which may be considered by the Court because it is referenced in the Complaint in the second action—at most, suggests that Grenada intended to make its first payment on the restructured bonds fourteen days before the first action was filed and that it intended to make another payment in September 2006, a few months before the original judgment was entered in February 2007. Morag Decl. Ex. D, at 6.  However, if "after the first suit is underway, a defendant engages in actionable conduct, plaintiff may—but is not required to—file a supplemental pleading setting forth defendant's subsequent conduct." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997).  More to the point, that case goes on to hold that "[p]laintiff's failure to supplement the pleadings of his already commenced lawsuit will not result in a res judicata bar when he alleges defendant's later conduct as a cause of action in a second suit." *Id*.  Given the proximity between Grenada's first alleged breach in this action and Ex-Im Bank's filing of the first action—a mere fourteen days—the doctrine of res judicata cannot apply. *See* Restatement (Second) of Judgments § 24(2) (1982) (urging a pragmatic determination of the relevant factual grouping).

      Grenada's argument based on the doctrine of merger does not fare any better.  Albeit in a different context, the Second Circuit recently characterized "merger" as a "terminology of the common law that federal courts have supposedly retired." *NML Capital, Ltd. v. Banco Cent. de la Republica Argentina*, 652 F.3d 172, 185 (2d Cir. 2011) (quoting *Migra v. Warren City Sch.*

*Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984), for the proposition that "Claim preclusion . . . encompasses the law of merger and bar."). Although Grenada acknowledged during the oral argument that "merger is not an independent, totally distinct doctrine" but "a subspecies of res judicata," it nonetheless urged the Court to apply the "concept of extinguishment, of a contract being extinguished and merging into a judgment" and adopt the position that no provisions of the loan instruments survive judgment absent explicit contrary language. Oral Arg. Tr. 7:6-9, 8:1-2 May 29, 2013. Similar efforts to bypass the standard res judicata analysis have been rejected by the courts in this Circuit. *See Counsel Fin. Servs., LLC v. Leibowitz*, No. 09-CV-1025S, 2012 WL 1057311, at *4 (W.D.N.Y. Mar. 27, 2012) (holding that the doctrine of merger "does not serve to limit a plaintiff to one suit based on one 'instrument,' but instead limits a plaintiff to one suit based on one event or series of events"); *see also Orix*, 965 F. Supp. at 485. Indeed, the Restatement (Second) of Judgments describes "the general rule of merger" as a judgment precluding "an action on the original claim" and is silent about precluding an action based on a contractual instrument. Restatement (Second) of Judgments § 18 (1982).

### 2. Ex-Im Bank's Cross Motion

Ex-Im Bank cross-moves for partial judgment on the pleadings with respect to Grenada's liability placing reliance on the recent Second Circuit decision, *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012). Grenada opposes, arguing that Plaintiff improperly seeks declaratory relief and that *NML* does not apply because Grenada's payment to other creditors is not enough to establish its liability. Proposed Intervenors also oppose, arguing that partial judgment under Rule 12(c) is inappropriate and contends that this case lacks the factual record or contractual language present in *NML*.

Assuming *arguendo* that the *pari passu* clause and the negative covenant are similar to the *pari passu* clause at issue in *NML*, Ex-Im Bank's cross motion must be denied because the pleadings are insufficient to support Grenada's liability under that case. On the other hand, Ex-Im Bank contends, not surprisingly, that the pleadings are sufficient because Grenada admits that: (1) it executed the four loan agreements at issue, Answer ¶ 6; (2) it has not made any payment to satisfy the amended judgment, *id*. ¶¶ 7, 9; (3) Grenada made payment to the holders of its outstanding bonds in the period between 2008 and 2012, *id*. ¶¶ 22, 23; and (4) the Offering Memorandum referenced in the pleadings states that Grenada does not intend to pay external debt that has not been restructured, Morag Decl. Ex. D, at 18. However, in *NML*, the Second

Circuit affirmed the district court's permanent injunction on the following grounds: "In short, the combination of Argentina's executive declarations and legislative enactments have ensured that plaintiffs' beneficial interests *do not* remain direct, unconditional, unsecured and unsubordinated obligations of the Republic and that any claims that may arise from the Republic's restructured debt *do* have priority in Argentinian courts over claims arising out of the Republic's unstructured debt." 699 F.3d at 260.  In contrast, the pleadings here establish only that Grenada may have made payments to other external bond holders in the period between 2008 and 2012 and that there was an Offering Memorandum stating that Grenada will not pay "any non-tendered Eligible Claims unless resources become available to do so." Morag Decl. Ex. D, at 18.  Critically, the parties dispute whether Ex-Im Bank's bonds are "Eligible Claims" at all. *See* Def.'s Opp. 5. Those two facts alone fail to establish Grenada's liability under *NML*. The fact is that in *NML*, the Second Circuit specifically left open the question of whether "a breach would occur with any non-payment that is coupled with payment on other debt . . . . [or] whether 'legislative enactment' alone could result in a breach" and chose to "simply affirm the district court's conclusion that Argentina's course of conduct here did." 699 F.3d at 264 n.16.  Because I deny Ex-Im Bank's cross motion, I need not reach the procedural issues.

**B. Intervention Motion**

Proposed Intervenors seek permission to intervene as Defendants, and they oppose Grenada's, as well as Ex-Im Bank's, motion for judgment on the pleadings.  To intervene as of right under Rule 24(a)(2), an applicant must (1) file timely, (2) demonstrate an interest relating to the property or transaction which is the subject of the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) show that there is an interest that is not adequately protected by the existing parties. *Brennan v. New York City Bd. of Educ.*, 260 F.3d 123, 128-129 (2d Cir. 2001).  Intervention may be denied if any one of the above four elements is lacking. *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003). Under Rule 24(b), a court may also grant permissive intervention to a party with "a claim or defense that shares with the main action a common question of law or fact," but the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3).  In exercising its broad discretion under Rule 24(b), a court considers the same factors that it considers for intervention as of right. *In re Bank of N.Y. Derivative Litig.*, 320 F.3d at 300 n.5.

Parties do not dispute the timeliness of Proposed Intervenors' motion, which was filed prior to any discovery. However, Grenada partially opposes the intervention with respect to its own motion for judgment on the pleadings on the ground that: (1) Proposed Intervenors have no cognizable interest as to that motion, as they are trying to protect a future litigation position; and (2) Ex-Im Bank adequately protects their interest. Ex-Im Bank, on the other hand, opposes the motion in its entirety on the ground that Proposed Intervenors have no "interest" in the litigation because their rights under the restructured bonds will not be affected by this litigation.

Here, the motion to intervene as of right pursuant to Fed. R. Civ. P. 24(a) is appropriate; the Proposed Intervenors have a "direct, substantial, and legally protectable" interest in the subject matter of the action. *United States v. City of New York*, 198 F.3d 360, 365 (2d Cir. 1999). Grenada's issue-by-issue approach is inapposite. Rule 24(a) examines whether there is "an interest relating to the property or transaction that is the subject of *the action*," rather than an issue. Fed. R. Civ. P. 24(a)(2) (emphasis added). And while Ex-Im Bank is correct that Proposed Intervenors have no interest in the four loan agreements between Grenada and Ex-Im Bank, as holders of Grenada's restructured bonds, they have a direct and legally protectable interest in this litigation where Ex-Im Bank seeks an injunction that would constrain Grenada's ability to pay Proposed Intervenors. Although Ex-Im Bank attempts to rely on cases where creditors seek to intervene in unrelated cases to recover the amounts owed from the debtor, *see, e.g.*, *Ouch v. Sharpless*, 237 F.R.D. 163, 166 (E.D. Tex. 2006), this case is distinguishable because Ex-Im Bank specifically seeks an injunction that targets Grenada's payment to Proposed Intervenors, *see* SA Compl. ¶¶ 35-39 (seeking as relief a permanent injunction against Grenada's preferential payment arrangement to other creditors).

As for impairment, Ex-Im Bank's argument that Grenada's legal obligation to Proposed Intervenors will remain unaffected is immaterial; the relevant test is whether "disposing of the action may as a *practical matter* impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(b)(2) (emphasis added). Lastly, neither Ex-Im Bank nor Grenada adequately represents Proposed Intervenors in this litigation because the parties' interests are not "so similar . . . that adequacy of representation was assured." *Brennan*, 260 F.3d at 133. Ex-Im Bank's interest is diametrically opposite to Proposed Intervenors', as the former seeks a permanent injunction that would constrain Grenada's ability to pay the latter; Grenada, on the other hand, is a debtor in default whose interest is to limit its present and future payment obligation.

## Conclusion

I have considered the parties' remaining arguments and find them without merit. For the reasons stated above, both Grenada and Ex-Im Bank's motions are DENIED, and Proposed Intervenors' motion is GRANTED. The Clerk of Court is instructed to close all open motions in this case and remove them from my docket. The parties are ORDERED to confer with each other and forward a proposed pretrial scheduling order to Chambers within 10 days of this Order.

**SO ORDERED.**

New York, New York
August 19, 2013

_____
Hon. Harold Baer Jr.
U.S.D.J.