UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
THE EXPORT-IMPORT BANK OF :
THE REPUBLIC OF CHINA, : Civil Action No. 13-cv-1450 (HB)
:
        Plaintiff/Judgment Creditor, :
:
 -against- :
:
GRENADA, :
:
        Defendant/Judgment Debtor. :
:
GMO TRUST, on behalf of its series GMO EMERGING :
COUNTRY DEBT FUND, GMO EMERGING COUNTRY :
DEBT L.P., GMO EMERGING COUNTRY DEBT :
INVESTMENT FUND PLC, GREYLOCK GLOBAL :
OPPORTUNITY MASTER FUND LTD., and FRANKLIN :
TEMPLETON EMERGING MARKET DEBT :
OPPORTUNITIES FUND PLC, :
:
        Intervenors/Defendants. :
:
------------------------------------------------------------------- X

**MEMORANDUM OF LAW OF THE EXPORT-IMPORT BANK OF THE REPUBLIC OF CHINA IN SUPPORT OF ITS MOTION TO COMPEL GRENADA'S RESPONSE TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO DEFENDANT**

SULLIVAN & WORCESTER LLP
Paul E. Summit
Andrew T. Solomon
1633 Broadway
New York, NY 10019

*Attorneys for Plaintiff/Judgment Creditor*

{B1588813}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

PROCEDURAL HISTORY........................................................................................................2

THE DOCUMENT REQUESTS ................................................................................................5

ARGUMENT................................................................................................................................6

I.  Documents Concerning Third Party Institutions are Essential to Crafting Appropriate Equitable Relief and Enforcing Such Relief....................................................6

II. The Deliberative Process Privilege Does Not Apply to the Information Sought in the Document Requests....................................................................................................7

    A. Grenada Failed to Properly Assert the Privilege; and Has No Sufficient Basis for Asserting the Privilege ....................................................................................8

    B. Even if the Privilege Had Been Properly Asserted, Grenada's Production Would Still Be Deficient........................................................................................9

        1. The Requested Information is Not "Predecisional" or "Deliberative" .............10

        2. The Evidentiary Need for the Information Sought in the Document Requests Outweighs the Harm that may Result from Disclosure....................11

PRAYER FOR RELIEF ............................................................................................................12

# TABLE OF AUTHORITIES

## Cases

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*,
   105 F.R.D. 16 (S.D.N.Y. 1984) .............................................................................. 9

*Environmental Protection Agency v. Mink*, 410 U.S. 73 (1973) ............................................. 7, 10

*Hopkins v. U.S. Department of Housing & Urban Development*,
   929 F.2d 81 (2d Cir. 1991) .................................................................................... 10

*LNC Investments, Inc. v. Republic of Nicaragua*, No. 96-cv-6360,
   1997 WL 729106 (S.D.N.Y. Nov. 21, 1997) ........................................................... 8, 9, 10

*NML Capital Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. 2013) .............................. 1, 7

*Reino De Espana v. American Bureau of Shipping*, No. 03-cv-3573,
   2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005) ............................................................. 8, 11

*Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634 (S.D.N.Y. 1991) ...................................... 10

*Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*,
   60 F.3d 867 (1st Cir. 1995) .............................................................................. 7, 10, 11

## Court Documents

Amended Judgment, March 16, 2007, ECF No. 15, *The Export-Import Bank of the
   Republic of China v. Grenada*, No. 06-cv-2469 (S.D.N.Y.) ............................................. 2

## Rules

Federal Rule of Civil Procedure 26 ................................................................................. 1

Federal Rule of Civil Procedure 34 ................................................................................. 1

Federal Rule of Civil Procedure 37 ................................................................................. 1

Plaintiff The Export-Import Bank of the Republic of China ("Ex-Im Bank") submits this Memorandum of Law in support of its motion, pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure, for an order compelling Defendant Grenada ("Grenada") to produce all documents responsive to Plaintiff's First Set of Document Requests to Defendant (the "Document Requests").

## PRELIMINARY STATEMENT

Grenada owes Ex-Im Bank over $33 million based on an unsatisfied judgment rendered by this Court in 2007. Since the date of judgment, Grenada has not paid Ex-Im Bank a single cent against this obligation. Yet Grenada has paid many other creditors, including the intervening parties. These post-judgment payments violate Grenada's obligation under its loan agreements with Ex-Im Bank, which preclude Grenada from preferring other creditors over Ex-Im Bank and require Grenada to pay Ex-Im Bank on a *pari passu* basis with other creditors. In recent decisions, the Second Circuit has held that these provisions are enforceable, including by way of permanent injunction. See *NML Capital Ltd. v. Republic of Arg.*, 727 F.3d 230 (2d Cir. 2013). This action seeks just such an injunction.

Ex-Im Bank seeks to compel the disclosure of documents related to Grenada's breach of the *pari passu* clauses in the four loan agreements (the "Loan Agreements") executed between Ex-Im Bank and Grenada that are at issue in this action. The Document Requests that are the subject of this motion seek factual information in connection with (1) Grenada's proposed restructuring of its debt, including External Indebtedness[1] – comprised of, at least, Grenada's U.S. Dollar Bonds Due 2025 (the "2025 Bonds") – that the Grenadian government announced in

---

[1] The term "External Indebtedness" is defined in the Document Requests (and in the Loan Agreements at issue) as "debt denominated in a currency other than Grenada's and payable to a nonresident of Grenada." Declaration of Paul E. Summit, dated June 4, 2014 (the "Summit Decl."), Exh. A; see also Summit Decl., Exhs. D-G.

{B1588813}   1

March of 2013; and (2) payments Grenada has made since 2007 to holders of its External Indebtedness. *See infra* pp. 5–6.

Grenada has two principal objections to the Document Requests: (1) the definition of Third Party Institutions as used in the Document Requests (Grenada says the definition is too broad); and (2) the "deliberative process privilege." Neither contention has merit. First, information regarding the identity of all Third Party Institutions is essential to crafting effective equitable relief and enforcing such relief. Second, the deliberative process privilege is inapplicable on procedural and substantive grounds. Procedurally, Grenada failed to follow the well-established requirements for asserting the deliberative process privilege, which require that (1) the privilege be invoked only by the head of the government agency which controls the documents in questions; (2) the documents in question be described and identified; and (3) precise and certain reasons be given for asserting confidentiality over the documents in question. Substantively, the deliberative process privilege is inapplicable because the documents sought by Ex-Im Bank would not be protected by the privilege: no deliberations are implicated in the documents sought. Moreover, the deliberative process privilege is only a qualified privilege, which can be overcome by a showing of need. Here, that showing is easily met: the documents sought are vital to demonstrating Grenada's breach of the *pari passu* clauses and the crafting of appropriate equitable relief.

## PROCEDURAL HISTORY

On March 16, 2007, in *The Export-Import Bank of the Republic of China v. Grenada*, No. 06-cv-2469(HB)(AJP) (S.D.N.Y.), an earlier action between Ex-Im Bank and Grenada, this Court entered an amended judgment (ECF No. 15) in favor of Ex-Im Bank and against Grenada in the amount of $21,586,057.38, plus pre-judgment interest, attorneys' fees and post-judgment

statutory interest, arising from Grenada's default on four multi-million dollar promissory notes executed by Grenada in favor of Ex-Im Bank from July 27, 1990 to January 21, 2000. Summit Decl., Exh. C. With post-judgment interest, Ex-Im Bank's judgment against Grenada now stands in excess of $33,000,000. More than seven years after judgment, Grenada has yet to pay any amount to Ex-Im Bank in satisfaction of the judgment.

Contemporaneous with the execution of the promissory notes, Ex-Im Bank and Grenada also executed the Loan Agreements, which governed Grenada's borrowing and repayment of money from (and to) Ex-Im Bank. The Loan Agreements contain *pari passu* clauses in which Grenada agreed to rank its obligations to Ex-Im Bank at least equally with its other External Indebtedness. Summit Decl., Exhs. D-G. The Loan Agreements also contain covenants which prohibit Grenada from prioritizing or entering into a preferential arrangement in favor of any other creditor until all amounts payable to Ex-Im Bank under the Loan Agreements are paid in full (the "Negative Covenant" clauses).[2] Summit Decl., Exhs. E-G. On March 4, 2013, Ex-Im Bank brought this action seeking an equitable remedy against Grenada in the form of injunctive relief requiring Grenada to uphold the *pari passu* and Negative Covenant provisions of the Loan Agreements. Summit Decl., Exh. H. On March 8, 2013, Grenada announced its intention to restructure its public debt, including its 2025 Bonds. Summit Decl., Exh. N. On March 13, 2013, the Court entered an order (the "Order") that prevents Grenada from making any payment with respect to the 2025 Bonds without first notifying Ex-Im Bank and the Court, but the Court has not yet entered permanent relief upholding and enforcing the *pari passu* and Negative Covenant clauses. Summit Decl., Exh. I.

---

[2] One of the four Loan Agreements does not contain a Negative Covenant provision. *See* Loan Agreement No. 6020216001, dated July 27, 1990, attached, in relevant part, to the Summit Decl. as Exhibit D.

On April 23, 2013, Ex-Im Bank served the Document Requests on Grenada. Summit Decl., Exh. A. On May 28, 2013, Grenada responded by objecting to them almost in their entirety. Summit Decl., Exh. B.[3]

On September 19, 2013, at the request of the parties, the Court ordered that the action be stayed until January 10, 2014. Summit Decl., ¶ 6. The Court subsequently extended the stay until April 11, 2014. Summit Decl., ¶ 7.

By letter of April 28, 2014, Ex-Im Bank requested that Grenada revisit its May 28, 2013 objections. Summit Decl., Exh. J. On May 6, 2014, the parties conferred (the "First Meet and Confer"). Summit Decl., ¶ 8. In the First Meet and Confer, Counsel for Grenada, Boaz Morag, represented that Grenada would produce some responsive documents, but that Grenada continued to object to certain Document Requests on relevance grounds and continued to assert the "deliberative process privilege" (*see* further discussion below) as to other Document Requests.

Grenada's production of 46 documents, on May 16, 2014, was woefully deficient. It consisted almost exclusively of documents publicly available from Grenada's website. Through additional correspondence and conferences,[4] the parties were able to resolve some issues, but two significant disputes remained. First, Grenada objects to Request No. 7(f), for all documents related to "the flow of funds among all Third Party Institutions," in connection with payments Grenada has made from 2007 to present to service its External Indebtedness, on the grounds that " 'Third Party Institutions' is defined to include entities other than paying agents, transfer agents, or trustees." Summit Decl., Exh. M. Second, Grenada objects to all the Document Requests to

---

[3] Grenada objected in blanket, conclusory form to all the document production requests, except it stated that it would produce "documents . . . that are in the public domain" as to Requests Nos. 1 and 6. Summit Decl., Exh. B.

[4] *See* Summit Decl., Exhs. K-L.

the extent that they seek internal communications of the Grenadian government on the grounds that such information is protected by the "deliberative process privilege."[5] *Id.*

## THE DOCUMENT REQUESTS

The Document Requests seek information about Grenada's proposed restructuring of its 2025 Bonds, which Grenada announced in early 2013 (the "Restructuring"). Summit Decl., Exh. A. Specifically, Document Requests Nos. 1-6 ask Grenada to produce the following documents:

| | |
|---|---|
| Request No. 1 | All documents concerning any proposals for the Restructuring;[6] |
| Request No. 2 | All documents concerning any proposed timetables for the Restructuring; |
| Request No. 3 | All documents identifying the particular individual(s) responsible for the Restructuring within Grenada's new government and/or civil service; |
| Request No. 4 | All documents concerning any proposals as to the identity of the Trustee, Registrar, Transfer Agent, Paying Agent, and/or Exchange Agent in connection with the Restructuring; |
| Request No. 5 | All documents concerning and identifying the coordinated group of Bondholders[7] that has built a majority position in the 2025 Bonds, which your counsel has initially identified as BroadSpan Capital LLC; and |
| Request No. 6 | All communications with the Bondholders regarding the Restructuring. |

*Id.*

---

[5] Grenada also objects to Request No. 6, for "[a]ll communications with the Bondholders regarding the Restructuring," on the grounds that certain communications between the Bondholders and Grenada require the protection of a confidentiality agreement. This contention is meritless. There is nothing in the record that even remotely suggests that there are documents related to this action that require a confidentiality agreement. Moreover, Grenada has failed to identify any specific communications that would require such protection. Therefore, Grenada must be compelled to produce all documents responsive to Request No. 6.

[6] The term "Restructuring" is defined in the Document Requests as "the proposed restructuring of the 2025 Bonds announced by Grenada in early 2013." Summit Decl., Exh. A.

[7] The term "Bondholders" is defined in the Document Requests as "holders of the 2025 Bonds." *Id.*

{B1588813}  5

The Document Requests also seek information about Grenada's External Indebtedness, including all payments that Grenada has made to service its External Indebtedness in the last seven years. *Id.* Specifically, Document Request No. 7 (a)-(g) asks Grenada to produce documents related to Grenada's External Indebtedness from 2007 to the present, including:

| | | |
|---|---|---|
| Request No. 7 (a) | | the name and address of each debtholder; |
| Request No. 7 (b) | | the nature or type of each External Indebtedness; |
| Request No. 7 (c) | | whether each External Indebtedness is commercial, bilateral, or multilateral; |
| Request No. 7 (d) | | all payments Grenada has made to service each External Indebtedness; |
| Request No. 7 (e) | | the dates and amounts of each such payment; |
| Request No. 7 (f) | | the flow of funds among all Third Party Institutions; and |
| Request No. 7 (g) | | all payments coming due between now [April 23, 2013] and April 30, 2014.[8] |

*Id.*

## ARGUMENT

### I. Documents Concerning Third Party Institutions are Essential to Crafting Appropriate Equitable Relief and Enforcing Such Relief

Without information regarding the flow of funds among Third Party Institutions, it is impossible for the Court to craft appropriate equitable relief and to enforce such relief. The term "Third Party Institutions" is defined in the Document Requests as "all paying agents, transfer agents, banking and financial institutions, and other third parties that assist or have assisted Grenada in making payments to service each External Indebtedness from 2007 to the present." Summit Decl., Exh. A. Grenada's attempt to limit the definition of Third Party Institutions to

---

[8] The parties agreed in their May 6, 2014 meet and confer that, given the passage of time, Ex-Im Bank's request for documents regarding "payments coming due between now and April 30, 2014" is now moot.

only paying agents, transfer agents, or trustees cannot stand. Ex-Im Bank is entitled to discovery regarding the process by which Grenada makes payments on its External Indebtedness. To understand that process, Ex-Im Bank must know the identities of *all* Third Party Institutions, including banking and financial institutions and other third parties "that assist or have assisted Grenada in making payments to service each External Indebtedness." *Id.*

Identifying all Third Party Institutions involved in the process is the key to any effective injunctive relief. *NML Capital Ltd. v. Republic of Arg.*, 727 F.3d 230, 244 (2d Cir. 2013) ("to prevent Argentina from avoiding its obligations to plaintiffs, it is necessary that the *process* for making payments on the Exchange Bonds be covered" by the injunctions issued by the court) (internal citations omitted). Any order issued by the Court must reach all banks and other agents that are working with Grenada in connection with the payment of its External Indebtedness. Without a full accounting of the process by which Grenada services its External Indebtedness, proper notice of any such order cannot be given and it will be impossible to ensure all Third Party Institutions' compliance with such an order. *See Id.* at 243 ("[t]he amended injunctions . . . provide notice to payment system participants that they could become liable through [Federal] Rule [of Civil Procedure] 65 if they assist Argentina in violating the district court's orders").

## II. The Deliberative Process Privilege Does Not Apply to the Information Sought in the Document Requests

The deliberative process privilege "shields from public disclosure confidential inter-agency memoranda on matters of law or policy." *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (citation omitted). "The privilege rests on a policy of affording reasonable security to the decisionmaking process within a government agency." *Id.* But the privilege "has finite limits, even in civil litigation." *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 87 (1973).

### A.   Grenada Failed to Properly Assert the Privilege; and Has No Sufficient Basis for Asserting the Privilege

Grenada's blanket assertion of the deliberative process privilege cannot stand on a host of grounds.

First, Grenada failed to follow the necessary procedural requirements to invoke the privilege. A party resisting discovery by invoking the deliberative process privilege must meet three procedural requirements. *Reino De Espana v. Am. Bureau of Shipping*, No. 03-cv-3573, 2005 WL 1813017, at *12 (S.D.N.Y. Aug. 1, 2005). First, the privilege may only be invoked "by the head of the governmental agency which has control over the information to be protected, after personal review of the documents in question," or alternatively, by "'a subordinate in high authority who is competent to assess the confidential nature of the agency's documents' designated by the agency head." *Id.* (internal citations omitted). Second, "the information or documents sought to be shielded must be identified and described." *Id.* (citation and internal quotation marks omitted). Third, "the agency must provide precise and certain reasons for asserting confidentiality over the requested information." *Id.* (citation and internal quotation marks omitted).

Although courts have held that foreign governments are entitled to protect certain executive deliberations under the deliberative process privilege, foreign governments are not exempt from the required procedural process in order to invoke the privilege. *LNC Invs., Inc. v. Republic of Nicar.*, No. 96-cv-6360, 1997 WL 729106, at *3 (S.D.N.Y. Nov. 21, 1997) (citation omitted). ("The party [seeking] to assert the privilege, however, must submit sufficient evidence to support its application."). Conclusory assertions that the requested discovery consists of deliberations regarding sensitive policy matters do not constitute sufficient evidence. *Id.* (plaintiff seeking to collect on a debt allegedly owed by a foreign sovereign was entitled to

discovery concerning deliberations at cabinet meetings because the foreign sovereign failed to state specific reasons for preserving confidentiality over the deliberations, including how discussions concerning the debt at issue would affect the foreign sovereign's national security or compromise important state secrets).

Here, Grenada has failed to identify any government official that has personally reviewed the documents in question. In addition, Grenada has not identified or described any of the documents it seeks to shield. Instead, Grenada relies upon a blanket general objection by its counsel to the Document Requests. This general objection cannot be sustained. *See Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petrol. Co.*, 105 F.R.D. 16, 25 (S.D.N.Y. 1984) ("To sustain generalized assertions of confidentiality . . . would give any government-[party] the ability to frustrate discovery and unfairly disadvantage its adversary.").

Finally, Grenada has failed to provide *any* reason for invoking the deliberative process privilege. And any reason Grenada *could* provide would be insufficient to support an application of the privilege. Like the defendant foreign sovereign in *LNC Invs.*, here, Grenada is involved in a purely commercial activity. Ex-Im Bank is merely seeking discovery to enforce its rights under a commercial contract. There is zero concern that the requested information would affect Grenada's national security or compromise important state secrets. Thus, Grenada's assertion of the deliberative process privilege is without merit and Grenada must be compelled to respond.

> **B.    Even if the Privilege Had Been Properly Asserted, Grenada's Production Would Still Be Deficient**

Even if Grenada had met all of the necessary procedural requirements under the deliberative process privilege (a set of requirements that Grenada has not even remotely approached), the information that Ex-Im Bank seeks in the Document Requests would still have to be produced.

{B1588813}                                                            9

### 1. The Requested Information is Not "Predecisional" or "Deliberative"

The deliberative process privilege protects only a narrow category of documents: ones that are both "predecisional" and "deliberative." *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 640 (S.D.N.Y. 1991). A document is predecisional "if it 'precedes, in temporal sequence, the decision to which it relates.'" *LNC Invs., Inc. v. Republic of Nicar.*, No. 96-cv-6360, 1997 WL 729106, at *1 (S.D.N.Y. Nov. 21, 1997) (citing *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991). A document is deliberative if it is "related to processes by which policies are formulated." *Id.*

Purely factual materials are not protected by the deliberative process privilege. *Resolution Trust Corp.*, 137 F.R.D. at 640; *Texaco P. R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995) ("factual statements or post-decisional documents explaining or justifying a decision already made are not shielded" from discovery under the deliberative process privilege); *see also Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 87–88 (1973) ("memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context [is] generally available for discovery . . . ."). Moreover, "materials related to the explanation, interpretation or application of an existing policy, as opposed to the formulation of a new policy" are likewise not protected by the deliberative process privilege. *Resolution Trust Corp.*, 137 F.R.D. at 641 (citation omitted).

Here, even if Grenada had met all the necessary procedural requirements, its blanket assertion of the deliberative process privilege would not prevent production of the documents sought in the Document Requests. Under a deliberative process privilege analysis, Ex-Im Bank would be entitled to discovery that reflects the facts of Grenada's debt situation. For example, in its September 9, 2005 Offering Memorandum, Grenada announced that it had ceased servicing

certain types of debt (external bonded indebtedness, most domestic bonded indebtedness, external commercial loans, and bilateral loans), but continued to service other types (domestic commercial loans, treasury bills, and multilateral loans). Grenada subsequently restructured its external bonded indebtedness and domestic bonded indebtedness and began to again service its external and domestic bonded indebtedness.

Any documents subsequent to Grenada's decision to cease servicing certain types of debt, while continuing to service other types, including documents related to payments Grenada has made to service such debt, such as the documents sought in Request No. 7, would still be discoverable because such documents are not "predecisional." Moreover, documents related to the implementation of such a policy, such as the documents sought in Requests Nos. 3 and 4, are not "deliberative" in nature, and would also be discoverable. The documents sought in Requests Nos. 1, 2, and 6 are similarly not "deliberative" in nature as these Document Requests also seek information regarding Grenada's implementation of the restructuring of its debt. In addition, the documents sought in Request No. 5 would be discoverable because the Document Request seeks "purely factual materials" regarding a certain group of Bondholders.

2. **The Evidentiary Need for the Information Sought in the Document Requests Outweighs the Harm that may Result from Disclosure**

There is yet a further reason for compelling production here. The deliberative process privilege, even when asserted by a sovereign attempting to meet all its procedural hurdles, is merely a qualified privilege; it is not absolute. *Texaco P. R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995). It can "be overcome upon showing that the adverse party's need for disclosure outweighs the agency's interest in confidentiality." *Reino De Espana v. Am. Bureau of Shipping*, No. 03-cv-3573, 2005 WL 1813017, at *12 (S.D.N.Y. Aug. 1, 2005) (citation omitted). Here, Ex-Im Bank has a clear need for the documents requested. Information

regarding the Restructuring and Grenada's service of its External Indebtedness to creditors other than Ex-Im Bank goes to the heart of the issue in the matter – Grenada's breach of the *pari passu* clauses in the Loan Agreements.  Such information is critical to establishing breach and for the Court to craft the appropriate equitable relief.  By contrast, Grenada's sole interest in keeping such information confidential is to conceal its breach and prevent the Court from issuing an order that fully protects Ex-Im Bank's rights under the Loan Agreements.

## PRAYER FOR RELIEF

Wherefore, Ex-Im Bank respectfully requests that this Court enter an order directing Grenada to fully respond to the Document Requests, granting Ex-Im Bank's attorneys' fees and costs related to this Motion, and for such other and further relief as may be deemed necessary.

Dated: New York, New York  
       June 4, 2014

SULLIVAN & WORCESTER LLP

By: /s/ Paul E. Summit  
    Paul E. Summit  
    Andrew T. Solomon  
1633 Broadway  
New York, NY 10019  
T. 212.660.3000  
F. 212.660.3001  
psummit@sandw.com  
asolomon@sandw.com

*Attorneys for Plaintiff /Judgment Creditor*